The exception taken to the denial of the motion for a nonsuit presents the question whether a grantee of real estate, on which a nuisance had been erected, before its conveyance to him, by a previous owner, and which was *Page 576 
merely continued as it was at the time he acquired title, can, without any previous notice of its existence, and a request to abate it, be held liable for damages subsequently resulting therefrom, during the continuance of his ownership.
The subject has been fully considered by courts in England and in several of our sister States; and the rule deducible from their decisions is laid down in Angell on Water-courses (6th, or Perkins' edition) to be, that an action on the case for a nuisance lies both against the person who originally committed it, and against the person in the occupation or possession of the premises who suffers it to continue, for the reason that the continuance of that which was originally a nuisance is a new
nuisance (§ 402); but as the purchaser of land might be subject to great injustice, if made responsible for consequences of a nuisance of which he was ignorant, and for damages which he never intended to occasion or continue, it has been held ever sincePenruddock's Case (5 Rep., 101) that where a party was not the original creator of the nuisance he must have notice of it, and a request must be made to remove it before any action can be brought. No particular form of notice or request is required. It may be either written or oral (or it may be by acts done), clearly informing the party to be affected by it of the existence of the nuisance, and of the desire of the party injured to have it removed, so that the person to whom it is addressed shall fully understand the ground of complaint, and that the party giving it is unwilling to have it continue. (§§ 403 and 403 a.)
In Penruddock's Case, above referred to, it was resolved by all the judges that, although the continuance by a feoffee of a nuisance erected by his feoffor was a new wrong, yet a quodpermittat would not lie against him without a request made to reform it. This principle has been sustained and recognized by the decisions in the following among other cases: Brent v.Haddon (Cro. Jac., 555); Winsmore v. Greenbank (Willes, 583); McDonough v. Gilman (3 Allen [85 Mass.], 264);Johnson v. Lewis (13 Conn., 303); Dodge v. Stacy (39 Vermont, 560); Pillsbury v. Morse *Page 577 
(44 Maine, 154); Plumer v. Harper (3 N.H., 88); Woodman v. Tufts
(9 id., 88-91); Carleton v. Redington (2 id., 291; id., 311);Eastman v. Amoskeag Manufacturing Co. (44 id., 143);Pierson v. Glean (2 Green [N.J.], 36); Beavers v. Winner
(1 Dutcher [N.J.], 96, 101); see, also, 1 Chitty's Pleadings, 71 and 77, 2d ed.; 2 id., 381, note p.
In Winsmore v. Greenbank (supra), decided in 1745, WILLES, Lord Chief Justice, in speaking of the distinction between the beginning and continuance of a nuisance by building a house that hangs over or damages the house of his neighbor, says: "That against the beginner an action may be brought without laying a request to remove the nuisance; but that against the continuer a request is necessary, for which Penruddock's Case
(5 Cro. Jac., 100, 101) was cited, and many others might have been quoted. The law is certainly so, and the reason of it is obvious."
It was said by the court in Dodge v. Stacy (supra), decided in 1867: "We regard it settled by the authority of well adjudged cases that when the action is brought against the grantee of one who has erected obstructions, it cannot be maintained without previous notice to the defendant to remove them;" and added, that the point was clear on principle and on authority.
Chief Justice HORNBLOWER, in Pierson v. Glean (supra), after citing Penruddock's Case said that the law, as settled by it, had not, as he believed, been seriously questioned since; and then after referring to the remark of Lord Chief Justice WILLES, in Winsmore v. Greenback, above quoted and other authorities, concluded his opinion, on deciding a demurrer to an answer by a defendant, setting up as a defence to an action for damages resulting from a nuisance that it had been erected before he had acquired title, and that he had never been requested to reform or remove it, by saying, "As well, then, upon the good sense and common justice of the case, as upon the ground of venerable and unquestioned authority, I am of opinion that the demurrer should be overruled." *Page 578 
I do not find, nor have I been referred to any decision in this State, on the distinct question now under review.
There are several cases reported, in which the general doctrine stated in Blackstone's Commentaries (vol. 3, p. 220) is asserted, that "every continuance of a nuisance is held to be a fresh one," but the statement, construed in connection with the context, evidently has reference to its continuance by the same party; and where persons succeeding to the ownership of land on which a nuisance had previously been erected, have been held liable for damages resulting from its subsequent continuance, it appears either that it was after notice of its existence, or that the question of such notice had not been raised at the trial. The case of Brown v. The Cayuga and Susquehanna Railroad Company
(2 Kern., 486) was one of the latter class, and in that ofIrvine v. Wood, decided by this commission in September, 1872* (which was for special damages resulting from a public nuisance), the fact was shown that the defendant Wood had knowledge of its existence and had availed himself of it; so that he was fully cognizant of it and of the consequences that might result therefrom.
There are, however, two cases reported, in which the question was discussed by able and eminent jurists, Judges DENIO and S.B. STRONG, entertaining different opinions, and the high estimation and respect to which that of the former is always entitled, adverse to the rule in England and in sister States, to which I have referred, has caused a hesitation and doubt in adopting it, and has led me to examine the ground on which he reached his conclusion.
The case in which Judge STRONG'S views are expressed is that ofHubbard v. Russell (24 Barb., 404), decided in 1857. It involved the question, but it did not become necessary to decide it, because it was held that the plaintiff had proved or offered to prove sufficient to infer a request to discontinue the nuisance.
The opinion of Judge DENIO was given, in Brown v. The Cayugaand Susquehanna Railroad Company (supra), before *Page 579 
that of Judge STRONG, but was not referred to by him, and probably had not been brought to his attention; and it is important, in considering what effect or weight should be given to that of Judge DENIO, to notice the fact that the question was confessedly not presented in the case in which it was delivered; and Judge A.S. JOHNSON, who gave the prevailing opinion in it, said that it was to be considered as if the requisite proof of a request to remove the nuisance had been given; it is also stated by the reporter that the court did not pass upon the question whether the defendant was liable, without notice, to remove the obstruction complained of.
The learned judge, in speaking of and commenting uponPenruddock's case, as that in which "the doctrine seems to have originated," said, and correctly, that it "was a quodpermittat, a form of action in which the successful plaintiff obtains a judgment not only for the damages, but for the abatement or destruction of the thing which is claimed to be a nuisance; and it was held that such an action might be brought against him who did the wrong, without any request made, but that it could not be brought against his feoffee without a previous request to remove the nuisance." He appears to concede the propriety and justice of the rule as applicable to that particular form of proceeding but claims that the reason for it does not apply to an action on the case. He says: "The remedy sought by a quod permittat involves an interference with the defendant's real estate, which it is reasonable he should have an opportunity to do himself before an authority is given to another to do it." It is true that such an interference might follow: Blackstone, in his Commentaries (vol. 3, p. 221), says it was "a writ commanding the defendant to permit the plaintiff to abate,quod permittat prosterndre, the nuisance complained of, and unless he so permits, to summon him to appear in court and show cause why he will not; and this lies as well for the alienee of the party first injured as against the alienee of the party first injuring, as has been determined by all the judges; and the plaintiff shall have judgment herein to abate *Page 580 
the nuisance and to recover damages against the defendant;" but it is apparent from the object of the writ, as thus stated, that there was much more reason for requiring a notice of the existence of a nuisance to be given to a party who might not have any knowledge of it and ask him to remove or abate it before he should be mulcted in damages, to which he would be liable for injuries resulting therefrom, and which he had no reason to anticipate, than to be called on by the requirement of the other relief sought to be obtained, being a permission to the plaintiff to abate the nuisance. The service of the writ on the defendant would give him an immediate opportunity to abate it himself; and it would doubtless have been a sufficient answer, on his appearance in court in obedience to the summons to show cause why he would not permit the plaintiff to do it, to return and state the fact that he had himself since its service abated or removed the cause of complaint, and that he previous thereto was wholly ignorant and uninformed of its existence. He would, nevertheless, if the views of the learned judge are correct, be held liable for damages which had resulted without any actual fault on his part.
Three other authorities, and only three, appear to have been cited as sustaining the requirement of a notice; at least no more are referred to by the judge. One was the case of Tomlin v.Fuller (1 Modern, 27), which he properly said turned upon the particular nature of the right which the plaintiff had to the use of a passage which the defendant had obstructed, in which TWISDEN, J., in speaking of it, said, "wherefore, it seems, he ought to have laid a request," and that the defendant might have demurred, but he held that it was cured by the verdict. That was, moreover, an action against the party who closed or shut the passage, and did not sustain the principle for which it was cited. Another case was that of Salmon v. Bensley (Ryan 
Moody, 189; 21 Eng. Com. Law R., 414). It was a nisi prius
case, involving a question of evidence in an action against anoccupier merely of the property, and in truth clearly not any authority in support *Page 581 
of the doctrine involved in this action, and I doubt whether the decision on the question actually presented was correct.
The other case was Johnson v. Lewis (13 Conn., 303,supra), which was disposed of by the remark of the learned judge that, "on the authority of Penruddock's Case and ofTomlin v. Fuller, the Supreme Court of Connecticut held that, in a case like the present, the plaintiff could not recover incase against one who continued a nuisance without proof of notice to the defendant to remove it." He then said, in conclusion: "Being of the opinion that the principle is not established by any authority binding on us, and seeing nothing in the nature of the case which requires a notice to be given to the upholder of a nuisance, as a condition to his being made responsible for its consequences, I think such notice is not required to be given. Every one is bound so to use his own property that it shall not be the means of injury to his neighbors; and I think the proprietor should himself look to it, and that he cannot safely wait to be admonished before reforming what may be dangerous to others." This reason is unsatisfactory. A party, having no knowledge or notice of the existence of an evil, cannot reform it; and he, consequently, cannot be chargeable with a fault or a wrong for not doing it; nor can he, under such circumstances, be said to uphold a nuisance, or bewaiting to be admonished to reform it. Such conduct implies a willing, and not merely an involuntary, acquiescence in the continuance of the wrongful act. I am, therefore, constrained to hold that the rule requiring notice is proper and should be adopted.
It is proper, before dismissing the question, to notice that the opinion of the General Term assumes that, in such case, all damages resulting between the conveyance by the wrong-doer and a demand of the alienee to abate the nuisance will be lost; and it is argued that a party cannot be deprived of his right of action therefor, by the act of the person doing the wrong in alienating the premises to a party of his own *Page 582 
selection. This is answered by the decision in Waggoner v.Jermain (3 Denio, 306), which had previously been cited, and decides expressly that such original wrong-doer, notwithstanding such alienation, remains liable for the damages occasioned by the continuance of the nuisance subsequent to the conveyance; and such is a part of the rule in Penruddock'sCase.
It is also stated in that opinion that the evidence in the case showed that the superintendent of the defendant's road had notice, prior to the years 1864 and 1865 (when the damages in question were sustained), from Charles Cooper, an owner of property adjacent to the plaintiff's, and exposed to like damages in case of floods, but who was not an agent of the plaintiff nor interested in the company, of the nature of the nuisance and its effect, and was asked to open the channel, and that he replied that he would not do it; and the judge, giving the opinion, closes it by saying that he was inclined to think that sufficient notice, if any was required. This is clearly untenable. A notice affecting the land of one party cannot be extended to a different piece of ground owned by another.
It follows from what has been said, without the expression of an opinion as to the third ground of the motion for a nonsuit, that proof of the mere continuance of the nuisance on the land of the defendant, without such knowledge or notice of its existence as to charge it with fault for such continuance, was not sufficient to maintain the action.
The judgment must, therefore, be reversed and a new trial granted, costs to abide the event.
All concur, on ground that proof must show notice or knowledge on the part of defendant of the existence of the nuisance, but that no request to abate it was necessary.
Judgment reversed.
* Ante, p. 224. *Page 583