MAURICE W. DESHONG, Appellant, v. THE CITY OF NEW YORK, Respondent.

1. MUNICIPAL CORPORATION — PRIVATE USE OF PUBLIC STREETS — PRESUMPTION ARISING FROM LAPSE OF TIME THAT USER IS WITH CONSENT OF THE PUBLIC AUTHORITIES MAY BE DISPELLED BY PROOF. Where a vault has existed under a sidewalk for more than twenty years and no objection has been made, as between the owner and a third person, it will be presumed that it was originally constructed with the assent of the public authorities, and the same presumption will obtain as against a municipality if there is no proof to overcome it. This presumption is not that the owner or his grantors acquired any right to the use of the street by prescription or without the consent of the proper authorities, but that from such use it might be presumed that the proper consent was given. It is, however, a presumption only which may be dispelled by proof. It is not a presumption of a grant of the title or of a permanent right in the street, as no power exists in the authorities to make such a grant or to confer any such right. The title to the streets being in the city as trustee for the public, no grant or permission can be legally given which will interfere with their public use. The right of the public to the use of the streets is absolute and paramount to any other. A presumption of or even an actual consent by the authorities to their use for private purposes is always subject and subordinate to the right of the public whenever required for public purposes, and such a grant or right cannot be presumed when it would have been unlawful.

2. NEW YORK CITY — RECONSTRUCTION OF VAULT UNDER SIDEWALK — WHEN PAYMENT FOR PERMIT INVOLUNTARY. A payment made by an abutting owner to municipal authorities for a permit to reconstruct a vault under a sidewalk in the city of New York, enforced by threats of

arrest and by taking possession of his property, is, if such authorities had no authority to exact it, not so far voluntary as to prevent him from maintaining an action for its recovery.

3. WHEN RECONSTRUCTION MAY BE MADE WITHOUT PERMIT OR ADDITIONAL COMPENSATION. Assuming that a proper permit had been previously granted him for the construction of the old vault, such owner has the right to continue the new vault without an additional permit or further compensation, subject, however, to the condition that its continuance will not interfere with the street or impair its use by the public.

4. COLLATION OF STATUTES RELATING TO USE OF PUBLIC STREETS FOR VAULTS. Statutes relating to the use of public streets in the city of New York collated and discussed, showing that from 1857 there has been continuous authority in the boards and officers mentioned therein to give permits for building and repairing vaults, and that since 1859 such permits and the applications therefor have been required to be in writing and to be kept in the proper office.

5. WHEN PRESUMPTION OF LAWFUL USER IS DISPELLED BY PROOF — QUESTION OF FACT. Where the plaintiff in such an action fails to prove the requisite written permit for the construction of the old vault, but relies upon the fact that it had been in existence since 1876, at least twenty-one years prior to the commencement of the action, without protest or interference from the city authorities, while a presumption is created that a permit was given by them, where there is proof that records of such permits were kept and that there was no record or index of any such permit in the proper office, the presumption is dispelled, or at least a question of fact arising upon conflicting evidence is presented, which if found against the plaintiff will preclude his recovery.

*Deshong* v. *City of New York*, 74 App. Div. 234, affirmed.

(Argued October 21, 1903; decided November 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 24, 1902, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles G. Cronin* and *Thomas O'Callaghan, Jr.,* for appellant. Where it is undisputed that a vault has been maintained and in constant actual use for upwards of forty years, the law will presume that it was originally constructed with the knowledge and assent of the public authorities.

(*People ex rel. Zeigler* v. *Collis*, 17 App. Div. 442.)   It is to be presumed that if the old vaults were constructed without authority, the public officers would have performed their duty and would have prevented any encroachment on the public street.   Such a presumption obtains in favor of public officers. (*Babbage* v. *Powers*, 130 N. Y. 281.)   Long user, without any objection by the city authorities, is presumptive evidence of consent on their part, without regard to the city ordinances. (*Jorgensen* v. *Squires*, 144 N. Y. 280.)   It was not incumbent upon the plaintiff to show that a permit for this areaway or vault had ever been issued. (*Babbage* v. *Powers*, 130 N. Y. 292; *Chicago City* v. *Robbins*, 2 Black, 418; *Robbins* v. *Chicago City*, 4 Wall. 657; *Jennings* v. *Van Schaick*, 108 N. Y. 530.)   The payment for the area covered by the old vault was not voluntary, but was the result of coercion and duress exercised by the city authorities, and wholly unlawful. (*Stenton* v. *Jerome*, 54 N. Y. 480; *Scholey* v. *Mumford*, 60 N. Y. 498; *Peyser* v. *Mayor, etc.*, 70 N. Y. 501; *Bruescher* v. *Portchester*, 101 N. Y. 240; *Redmond* v. *Mayor, etc.*, 125 N. Y. 632; *Tripler* v. *Mayor, etc.*, 125 N. Y. 617; *Freeman* v. *Grant*, 132 N. Y. 28; *Poth* v. *Mayor, etc.*, 151 N. Y. 16; *Æ. Ins. Co.* v. *Mayor, etc.*, 153 N. Y. 331.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *W. B. Crowell* of counsel), for respondent.   The public records fail to show that vault permits had ever been issued for the space in question and rebut the presumption of an ancient vault. (*Hall* v. *Kellogg*, 16 Mich. 135; *Owings* v. *Speed*, 5 Wheat. 420; *Denning* v. *Roome*, 6 Wend. 651; *Power* v. *Vil. of Athens*, 99 N. Y. 592.)   The payment made under protest was for the plaintiff's convenience, and he intended to immediately sue and recover it after finishing his building. (*Flower* v. *Lance*, 59 N. Y. 603; *N. S. Bank* v. *Town of Woodbury*, 173 N. Y. 55.)

Martin, J.   This controversy relates to the right of the plaintiff to build and maintain a vault under the sidewalk in

front of lots numbers 54 and 56 West Third street, in the city of New York. In 1898 the buildings which had been previously erected thereon were torn down and a new building was in process of construction. When the old buildings were removed there was a vault under the sidewalk in front. It had existed there from the year 1876, and from a time between 1860 and 1870 there had been a small one under the sidewalk, used for storing coal, which was not connected with the building. When the plaintiff commenced to rebuild the vault by constructing new walls inside the old ones, and putting in iron beams upon which the sidewalk was to rest, the public authorities of the city refused to allow him to proceed until he had procured a written permit. The commissioner of highways, having charge of the streets including vaults therein, decided that the plaintiff was required to procure a permit for the erection of such vault and to pay the city therefor the sum of nine hundred and fourteen dollars. This he paid under protest and brought this action to recover the amount. The defendant relied upon two defenses : *First,* that there was no coercion or duress by the city in obtaining such payment, and, therefore, it was voluntary ; and, *second,* that no permit was ever issued for the old vault, and, consequently, the plaintiff had no right to build a new one without a proper permit and paying the usual compensation therefor.

The first question is whether the payment sought to be recovered was voluntary, or whether it was made under circumstances entitling the plaintiff to recover. The undisputed proof was that while the new vault was being constructed a deputy or inspector of the department of highways came to the place, stated to the plaintiff that his men must stop work, and declared that if they continued he would have the plaintiff and all the men who were at work arrested. He then called two men to guard the place and stationed a policeman there to stop the work upon the ground that the plaintiff had no permit and would not be allowed to proceed until one was obtained. To avoid arrest and to retain possession of the property so that the building and its appurtenances might be

completed and occupied the plaintiff was required to pay the sum of nine hundred and fourteen dollars, which he did under protest. Payments coerced by duress or unlawful compulsion may be recovered back. The coercion, however, must be illegal, unjust or oppressive. One of the several and perhaps most common instances of duress is by threats of actual imprisonment unless the required act shall be performed. While there may be a diversity of opinion in some of the reported cases as to what circumstances are sufficient to constitute such coercion as will enable a party paying under protest to recover, still, under the facts in this case we think it is quite apparent that the amount demanded of the plaintiff was paid under such circumstances as would enable him to recover, if neither the city nor its officers had authority to charge or demand it. If the city made the charge and demanded its payment without authority of law it was void, and the action of its officers in enforcing it by threats of arrest and by taking unlawful possession of the plaintiff's property was illegal and payment by him was not so far voluntary as to prevent a recovery in this action. (*Briggs* v. *Boyd,* 56 N. Y. 289; *Scholey* v. *Mumford,* 60 N. Y. 498; *Newman* v. *Bd. Supervisors Livingston Co.,* 45 N. Y. 676; *Strusburgh* v. *Mayor, etc., of N. Y.,* 87 N. Y. 452; *Horn* v. *Town of New Lots,* 83 N. Y. 100; *Matter of Home P. S. F. Assn.,* 129 N. Y. 288; *Freeman* v. *Grant,* 132 N. Y. 22, 28; *Talmage* v. *Third Nat. Bk.,* 91 N. Y. 531, 536; *Peyser* v. *Mayor, etc., of N. Y.,* 70 N. Y. 497; *Ætna Ins. Co.* v. *Mayor, etc., of N. Y.,* 153 N. Y. 331.) Therefore, we are of the opinion that the contention of the defendant that the judgment can be upheld upon the ground that the payment by the plaintiff was voluntary, cannot be sustained.

It seems to have been assumed by both parties that if a proper permit had been previously granted the plaintiff had a right to continue his new vault in place of the old one without an additional permit or further compensation. With this assumption we are disposed to agree subject, however, to the condition that its continuance would not interfere with the

street or impair its use by the public.    Whenever the existence
of a vault would interfere with the public use of the street,
the right to maintain it must be held to terminate, as the
rights of individuals under such permits must be regarded as
subordinate to the necessities or requirements of the public.
Before entering upon the discussion of the question whether
a permit had been issued for the old vaults, a brief history of
the statutes and ordinances relating to the subject seems
necessary to ascertain the powers of the city and the rights of
the plaintiff, so far as they are controlled by either.

So far as appears the first legislative permission for the use
of public streets in the city of New York for vaults was
given by chapter 446 of the Laws of 1857, which conferred
upon the Croton aqueduct board charge of issuing permits
for street vaults.  (§ 24.)   After the passage of that act it
was provided by the revised ordinances of 1859 that no per-
son should cause or procure any vault to be constructed or
made in any of the streets in the city without the permission
of the Croton aqueduct board, and that every application
for such permission should be in writing and signed by the
person making the same.    In 1866 the same ordinances were
continued.   The Croton aqueduct board had control of this
subject until the adoption of the charter of 1870.  (L. 1870,
ch. 137.)   The latter act gave the common council power to
make ordinances in relation to the construction, repairs and
use of vaults, conferred upon the department of public works
the power theretofore vested in the Croton aqueduct board
and provided that such department should have cognizance
and control of street vaults.  (§ 21, subdiv. 20, §§ 77, 78.)
In 1873 (L. 1873, ch. 335) the common council was given
power to make, continue, modify and repeal such ordinances,
regulations and resolutions as might be necessary to carry into
effect all powers then vested in or by that act conferred upon
the corporation in relation to the construction, repairs and use
of vaults, and that act declared that the chief officer of the
department should be known as the commissioner of public
works, and should have cognizance and control of street vaults.

(§ 17, subdiv. 18; § 70; § 71, subdiv. 8.) In 1880 the ordinances of the city were again revised or compiled and provided that the commissioner of public works on application was empowered to give permission to construct any vaults or cisterns in the streets, provided, in the opinion of the commissioner, no injury would come to the public thereby. They forbade the building or construction of any vault or cistern without the written permission of the commissioner of public works, and then declared that every application for such permission should be in writing, signed by the person making the same, stating the number of feet of ground required and the intended length and width thereof. In 1882 the Consolidation Act was enacted and conferred upon the common council the power to make ordinances in relation to the construction, repairs and use of vaults, etc., and provided that the department of public works should have cognizance and control of street vaults and openings in sidewalks. (§ 86, subdiv. 17; § 316, subdiv. 8.) Then followed the charter of Greater New York which provides that the municipal assembly shall have power to make, establish, publish and modify, amend or repeal ordinances, rules and regulations not inconsistent with that act or the Constitution, in relation to the construction, repair and use of vaults, and gives the commissioner of highways cognizance and control of licensing vaults under sidewalks. (§ 49, subdiv. 17; § 524, subdiv. 5.) The revised ordinances of March, 1897, contained the same provisions in regard to vaults as were contained in the ordinances of 1880.

Thus we find that from 1857 to the commencement of this action there has been continuous authority in the boards and officers mentioned to give permits for building and repairing vaults, and since 1859 every application for such permission has been required to be in writing and signed by the person making the same. Hence, as the old vaults were not shown to have been built before 1876, it is to be borne in mind that these statutes and ordinances were adopted and in force before the old vaults were constructed, and required a written application and permit, which were to be kept in the proper

31

office.   Moreover, it does not appear that there was any offi-
cer of the city authorized to verbally consent to the erection
or maintenance of such vaults, and the statutes and ordinances.
requiring such application and permit to be in writing, by
.implication at least, forbade such verbal consent or permission..
There is no claim that the plaintiff or any former owner of the
property had the right to build vaults under the sidewalk in
the street, without permission from the public authorities and
payment for the privilege.   Nor is there any direct proof
that the permit required was ever granted for the construction
of any previous vault.

The single claim of the plaintiff is that there being evi-
dence that a vault or vaults had been in existence at that place
for at least twenty-one years, without protest or interference
from the city authorities, it is to be presumed that a permit
had been obtained, and that the existence of the old vault was.
lawful.   To sustain this proposition, he relies upon the follow-
ing cases in this court: *Jennings* v. *Van Schaick* (108 N. Y.
530, 532); *Babbage* v. *Powers* (130 N. Y. 281), and *Jorgen-
sen* v. *Squires* (144 N. Y. 280).   In discussing a somewhat
similar question in the *Jennings* case, it was said : " It does
not appear that the defendant, who owned the premises, had
ever obtained from the municipal authorities any formal
license or permission to construct the opening in the sidewalk,.
but such authority was a reasonable inference from an acqui-
escence of eighteen years without objection from the city."
In the *Babbage* case it was in effect held that while the public
is entitled to have a street remain in the condition in which it
was placed, and whoever, without special authority, materially
obstructs it or renders its use hazardous by doing anything
upon, above or below the surface, is guilty of a nuisance, yet,
when it appears that the act was done with the consent of the
proper officials, the rule of liability is relaxed, and that where
a vault had been constructed under the sidewalk, and used for
nine years, consent to its construction was to be inferred from
the acquiescence of the city officials having charge of the city
street and power to give such consent, and that in the absence.

of a statute regulating the subject, a written consent was not requisite. So in *Jorgensen* v. *Squires*, it was held that the legislature might authorize a limited use of sidewalks for cellar openings or vaults, and might delegate this power to the municipal authorities, and that where such use had continued for twenty years, without objection, it was presumptive evidence of consent upon their part, and in the absence of affirmative proof of permission, it should be implied, if there was nothing to disprove it. In *People ex rel. Ziegler* v. *Collis* (17 App. Div. 448) the same doctrine was held. It was there determined that where a vault had been maintained under a sidewalk for thirty years and there was no proof to the contrary, it would be presumed that it was originally constructed with the assent of the public authorities; that where the commissioner of public works had decided that a permit to open the street to repair the same should be granted, he had no right to charge for the privilege, and that the relator was entitled to a mandamus compelling him to grant the permit without such payment.

Where a vault has existed under a sidewalk for more than twenty years and no objection has been made, the doctrine of these authorities seems to justify the conclusion that as between the owner and a third person it will be presumed that it was originally constructed with the assent of the public authorities, and that the same presumption will obtain as against the city if there is no proof to overcome it. This presumption is not that the plaintiff or his grantors acquired any right to the use of the street by prescription or without the consent of the proper authorities, but that from such use it might be presumed that the proper consent was given. It is, however, a presumption only which may be dispelled by proof. It is not a presumption of a grant of the title or of a permanent right in the street, as no power exists in the authorities to make such a grant or to confer any such right. The title to the streets being in the city as trustee for the public, no grant or permission can be legally given which will interfere with their public use. The right of the public to the use

of the streets is absolute and paramount to any other.    A presumption of consent or even an actual consent by the authorities to their use for private purposes is always subject and subordinate to the right of the public whenever required for public purposes, and such a grant or right cannot be presumed when it would have been unlawful. (*Donahue* v. *State of N. Y.*, 112 N. Y. 142.)    Moreover, in the cases in this court which are cited, the question arose not between the owner of the adjacent premises and the municipality, but between the owner and a third person, where the latter claimed to recover for personal injuries caused by the negligent or wrongful act of the former.    It seems quite evident that the principle which is applicable in such a case is not necessarily controlling or even applicable where the question is between the owner and the city and the former claims a right to the use of the street for which no permit has been given. In other words, there can be no rightful, permanent possession of any part of a public street for private purposes, unless by virtue of an authorized permission of the city, and no length of time will render legal a private interference with a street which is a nuisance, or give the person maintaining it any right to continue it as against the municipality.    If, however, we assume that proof that the original vault had been used more than twenty years created a presumption, even against the city, that it was originally constructed with the assent of the public authorities, we are still required to consider and give effect to the evidence tending to show that no such consent was given.    The evidence disclosed that there was an office in which records of all such applications and permits were filed and indexed as required by the statutes and ordinances of the city, and that a diligent examination was made of such records from a time anterior to the erection of the old vault and that no permit for building it had been granted or existed.    The right to grant such permit was conferred by the legislature in 1857, and that act and the subsequent statutes and ordinances enacted in pursuance thereof require that the application and permit should be in writing, and, therefore, if

any such permit had been granted, the presumption is that it would have been entered or filed in the proper office. (Lawson's Presumptive Evidence, 67; *Leland* v. *Cameron*, 31 N. Y. 115; *People* v. *Snyder*, 41 N. Y. 397.) The law presumes that all officers intrusted with the custody of public files and records will perform their official duty by keeping the same safely in their offices, and if a paper is not found where, if in existence, it ought to be deposited or recorded, the presumption thereupon arises that no such document has ever been in existence, and until this presumption is rebutted it must stand as proof of such non-existence. (*Hall* v. *Kellogg*, 16 Mich. 135; Lawson's Presumptive Evidence, 75; *Buck* v. *Barker*, 5 N. Y. St. Repr. 826; *Brown* v. *Torrey*, 10 J. & S. 1, 4; Code of Civil Procedure, §§ 921, 961.)

Therefore, as neither the plaintiff nor his grantor could acquire any title or interest in the street except in the manner provided by the statutes and ordinances passed in pursuance thereof, it seems quite clear that when the defendant proved that such records were kept and that there was no record or index of any such permit in the proper office, it dispelled the presumption of such consent arising from the previous acquiescence of the officials having the matter in charge, or at least presented a question of fact upon which the evidence was conflicting and which has been conclusively settled by the decisions of the courts below. If these conclusions are correct, it follows that there was no sufficient evidence that a consent to build the old vault had ever been obtained, and, consequently, the plaintiff was required to procure a permit and pay the usual compensation before he could legally construct such new vault.

The judgment should be affirmed, with costs.

PARKER, Ch. J., HAIGHT, CULLEN, WERNER, JJ. (and GRAY, J., in result), concur; VANN, J., dissents.

Judgment affirmed.