PATTERSON, McLAUGHLIN and LAUGHLIN, JJ., concurred; VAN BRUNT, P. J., concurred in result.

Judgment affirmed, with costs.

---

JULIUS WOLFF, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

*Payment for a permit to repair an areaway, in existence for fifty years, in a street in New York city — when it is voluntary and cannot be recovered.*

An owner of a building in the city of New York, in front of which there had existed continuously since 1854, apparently without any permit from the city authorities, an areaway under the sidewalk, attempted, in 1897, to replace the wooden cover of said areaway with an iron one. The commissioner of public works had requested the police commissioner to prevent work from being done, without a permit, on vaults in the public streets. While the work of replacing the cover was being performed by a contractor employed by the owner, a policeman appeared and demanded the production of a permit from the department of public works. The permit not being produced, he threatened to arrest the workmen. The owner, being informed of these facts, applied for and obtained from the department of public works a permit for the construction of a vault under the sidewalk, paying therefor the sum of $229.50. He made no claim to any city authority that he had any existing right to construct the areaway. It did not appear that the vault privileges conferred by the permit were not in excess of those previously exercised by the owner.

*Held,* that the payment for the permit was voluntary and that the owner was not entitled to recover from the city the amount which he paid therefor.

O'BRIEN and McLAUGHLIN, JJ., dissented.

APPEAL by the plaintiff, Julius Wolff, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 12th day of September, 1903, upon the decision of the court, rendered after a trial at the New York Trial Term, a jury having been waived, dismissing the complaint upon the merits.

*George I. Woolley,* for the appellant.

*Terence Farley,* for the respondent.

INGRAHAM, J.:

The plaintiff is the owner of a piece of property on the easterly side of Hudson street, between Duane and Thomas streets, in the city of New York, upon which there had been a brick building since the year 1854. Annexed to that building there was what was described as a covered areaway, which extended into the street, and which appears to have had a superficial area of one hundred and fourteen and seventy-five one-hundredths square feet. This covered areaway had existed continuously since 1854. In April, 1897, the plaintiff was engaged in making repairs and alterations to this building. In carrying out these improvements he wished to cover the areaway with an iron cover, in which were inserted small pieces of glass. Prior to these alterations this areaway had been covered with heavy planks. In making this change the planks were removed, and a contractor for the plaintiff started to place the iron frame for the new cover, when a policeman asked for a permit from the department of public works. When no permit was produced he said that he would arrest those that worked there, because there was no permit from the department of public works. Upon the plaintiff being informed of this condition he gave to his architect a check for $229.50, to the order of the department of public works, and signed an application for a permit. This application was dated April 20, 1897, and by it the plaintiff applied to the department of public works for permission " to construct under and in accordance with the ordinances of the corporation relative to vaults, cisterns and areas, a vault in conformity with the accompanying plan in front" of the plaintiff's premises, the said vault to be four feet six inches in width and twenty-five feet six inches in length, outside measurement, and to occupy one hundred and fourteen and seventy-five one-hundredths square feet, at two dollars a square foot, for $229.50. The said application contained the following provision : " The party or parties procuring this permit hereby agrees to keep the pavement affected by constructing the vault in good order for the period of one year from the date of the filing of certificate of the completion of the work. The certificate shall be subject to revocation thereof

at any time hereafter by the Commissioner of Public Works, when in his judgment the space occupied by said vault or any portion thereof may be required for any public improvements, or for violation of the terms and conditions herein." Upon the filing of this application and the payment of this sum of money, a permit was given by the department of public works to the plaintiff to construct a vault in front of the premises known as No. 44 Hudson street, used for business purposes, said vault to be four feet six inches in width and twenty-five feet six inches in length, outside measurement, and to occupy one hundred and fourteen and seventy-five one-hundredths square feet, "subject to obligation to construct recess or chamber for existing hydrant or stopcock, as per annexed plan, and upon condition that the person or persons to whom this permit is granted will in all respects comply with the corporation ordinances relative to ' vaults, cisterns and areas,' " and upon the further condition that the permit gave no authority "and it is strictly forbidden to disturb, by excavation or otherwise or in any way damage or interfere with the proper use of any lamp post," or other fixture connected with the sewer or water system; and permission was also given to erect a bridge not to exceed five feet in height above the sidewalk and ten feet in width, with steps leading to said bridge to rest on the sidewalk of the adjoining premises during the construction of the vault, and by it the party procuring the permit agreed to keep the pavement affected by constructing the vault in good order for a period of one year from the date of filing surveyor's certificate upon completion of the work; and the permit was issued subject to revocation at any time by the commissioner of public works. Upon payment of this sum of money and the receipt of the permit the plaintiff completed the construction of the vault.

There was no claim made to the commissioner of public works or any other city authority that the plaintiff had any right to construct this vault or covered areaway, either under a permit before granted by the city, or by prescription, or upon any other grounds. All that appears is that the plaintiff commenced some construction in the street when he was stopped by a policeman, who in effect stated that before any interference with the street could be allowed he must have a permit from the proper city department, and upon that notice being given by the policeman, the plaintiff voluntarily made an application

for a permit to construct a vault under the sidewalk, presented that application to the proper city authorities and was granted the permit upon payment of the sum fixed for such permits. It nowhere appears that the space before occupied by the plaintiff included all that was given by the city by this permit, or that the right acquired by the permit was not in excess of that before used by the plaintiff as a part of his building. By this permit the plaintiff has acquired a right to construct a vault in a public street, and for that purpose to use the surface of the street. There is, therefore, nothing to show but that the plaintiff acquired a right, by virtue of this permit, in excess of that which had been before used, and which would be a good consideration for the payment of the money for which this permit was issued. The plaintiff having obtained this permit on payment of the $229.50 to the city on the 20th of April, 1897, and having then completed his repairs to his building and used so much of the street allowed to be used by the permit, on the 9th of April, 1903, nearly six years thereafter, commenced this action to recover back the amount that had been paid for the permit.

There was proof that the commissioner of public works had requested the police commissioners to prevent work being done without a permit on vaults in the public streets. Irrespective of the right of the plaintiff to construct a vault or areaway cover in front of his premises, it was not illegal for the police authorities to require persons disturbing the surface of the street or constructing vaults in the street to produce a permit or authority to thus incumber the street before being allowed to continue the work. There was nothing to show that the city officers were informed that the plaintiff had or claimed a right in the street. The policeman said that he would arrest those engaged in disturbing the street unless they had a permit from the proper city authorities. He made no attempt to adjudicate upon the plaintiff's right to construct this areaway, nor did the plaintiff or his contractor insist to the policeman that the plaintiff had a right to construct this vault. Any unauthorized obstruction in the public streets or interference with the surface of the streets is a misdemeanor and justifies a police officer in arresting those engaged in committing the offense. It was the duty of the plaintiff to obtain a permit before he disturbed the surface of the street in his building operations; and if he had a right to

a permit therefor without compensation, it is to be presumed that upon a statement of the facts to the proper municipal officers he would have been granted the permit without payment. He did nothing of the kind. He signed an application for a regular vault permit, which, so far as appears from this record, he did not theretofore have, and which allowed him to construct in the street a vault which he had not before constructed. He had a right to make such an application for a permit, which would insure to him by a formal legal instrument an undisputed right to use this street during the continuance of the permit, and to agree to pay therefor a sum of money ; and the city had a right to issue the permit and receive the money. It cannot be said that what was granted to the plaintiff was nothing more than a right to continue a use to which he was entitled, and it cannot be said that the payment of this money to the city was without a consideration received by the plaintiff.

Nor can it be said that this payment was obtained from the plaintiff by duress. As before stated, there was no adjudication by the policeman that the plaintiff had no right to reconstruct the building as he proposed doing. All that the policeman required was that his right to use this portion of the street should be determined by the proper authorities. It could not have been supposed by the plaintiff that a policeman was authorized to determine questions of law as to the right of the plaintiff to maintain this structure in the street. If the plaintiff had stated the facts to the commissioner of public works and requested a permit to reconstruct this areaway and that had been refused, and in order to continue the construction of the building he had been required to pay this sum of money, a different question would have been presented. When he was informed that the policeman required that the proper city officials should grant a permit before he would be allowed to continue he made an application to the department of public works for a permit, which was granted and for which he paid the consideration prescribed by the city ordinance. The plaintiff had a right to apply for a formal written permit which would insure to him the right to use a portion of the street in addition to the right which he claimed by prescription. No permit to reconstruct his building in the condition in which it had existed since 1854 was ever applied, for or refused. No threat was ever made that unless he paid this

FIRST DEPARTMENT, MARCH, 1904.    [Vol. 92.

sum of money he would be arrested or interfered with, and it seems to me clear that he voluntarily applied for a right which was granted him and voluntarily paid the consideration fixed by law for acquiring such a right. He retains this permit and claims a right under it and under no principle with which I am familiar is he entitled, holding the permit, to recover back the consideration paid for it. Neither in his pleadings nor upon the trial did he offer to surrender the permit.

There is a material distinction between this case and *Deshong* v. *City of New York* (176 N. Y. 475), as in that case it was proved that while the new vault was being constructed a deputy or inspector of the department of highways came to the place, stated to the plaintiff that his men must stop work and declared that if they continued he would have the plaintiff and all the men who were at work arrested, and that to avoid this arrest and retain possession of the property so that the building and its appurtenances might be completed and occupied, the plaintiff was required to pay the sum of $914, which he did under protest. In discussing whether payment under those circumstances was a voluntary payment, the court said: "Payments coerced by duress or unlawful compulsion may be recovered back. The coercion, however, must be illegal, unjust or oppressive. One of the several and perhaps most common instances of duress is by threats of actual imprisonment unless the required act shall be performed. * * * If the city made the charge and demanded its payment without authority of law it was void, and the action of its officers in enforcing it by threats of arrest and by taking unlawful possession of the plaintiff's property was illegal, and payment by him was not so far voluntary as to prevent a recovery in this action." In this case there was no threat of this kind. No inspector or official of the department of public works informed the plaintiff that he must pay this sum or he would be arrested, nor was any possession taken of his premises. All that the policeman did was to say that the plaintiff must exhibit a permit to use the street to avoid an arrest for an unauthorized appropriation or interference with the surface of the street. This may be assumed to have been in pursuance of a regulation of the department of the city government having charge of the streets providing that persons who attempt to interfere with the public streets

without a permit should be arrested. This seems to be an entirely reasonable regulation to prevent encroachments upon the streets and to require persons attempting to use the street to exhibit their right to use it. The plaintiff applied to the proper officer for a permit, which was granted to him upon the terms that he offered to pay in his application, without any threat on the part of the municipal officer of any kind; and, so far as appears, the only application that he ever made to any of the public officials was the application for the permit upon paying the sum of money named, which application was granted and the permit issued. If there ever was a case in which a payment was voluntary, this is such a case; and it seems clear that the plaintiff cannot retain the advantage which he has procured by the issuance to him of this permit and recover back the money that he paid in consideration of its being issued.

It follows that the judgment appealed from must be affirmed, with costs.

VAN BRUNT, P. J., and HATCH, J., concurred; O'BRIEN and McLAUGHLIN, JJ., dissented.

McLAUGHLIN, J. (dissenting):

I dissent. The vault in question existed without objection, so far as appears, from any one or the city, from 1853 to the time the demand was made for the payment of the money, to recover which this action is brought. This being so, a presumption under the rule laid down in *Deshong* v. *City of New York* (176 N. Y. 475) prevailed that it was originally constructed with the consent of the municipal authorities, and this presumption was not overcome by any proof offered at the trial. It is unquestionably true that the right of the public to the use of the streets is absolute and paramount to any other, and a presumption of consent or even an actual consent of the authorities to their use for private purposes is always subject and subordinate to the rights of the public whenever required for public purposes. Here the space occupied by the vault is not sought to be taken by the city for public use, nor does the city object to the use which the plaintiff is making of it. What the city does object to is that such use shall be made of it by the plaintiff without his obtaining a permit, but the presumption is that he has already obtained a permit, and that being so, he cannot legally be

required to obtain another. (*People ex rel. Ziegler v. Collis,* 17 App. Div. 448; *Deshong v. City of New York, supra.*)

Nor do I think it can be said that the payment made was voluntary. After the old covering had been taken up and while the new one was being put down, the work was stopped by a policeman, who demanded a permit, and threatened to arrest the workmen if they continued without procuring one, and in this connection it appeared that the commissioner of public works had directed that the police department be requested to prevent such work being done without a permit; and plaintiff sought to show that a formal order had been issued to this effect but, on objection of the defendant, such evidence was excluded. The other evidence, however, was sufficient to show that the policeman who threatened the arrest was acting under the direction of the commissioner of public works. Indeed, it would seem to be hardly necessary to show that, because the Revised Ordinances of the city of New York (§ 319) forbid the construction of vaults without permits, and the police are charged with the enforcement of such ordinances.

For the foregoing reasons I think the judgment appealed from should be reversed, with costs, and a new trial ordered.

O'BRIEN, J., concurred.

Judgment affirmed, with costs.