MAHONEY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. MUNICIPAL CORPORATIONS (§ 668*)—USE OF STREETS—VAULTS UNDER SIDE-WALK—LICENSE.

If a proper permit had been granted for construction of old vaults under a sidewalk, the owner had a right to continue new vaults in such spaces without an additional permit or paying therefor, provided the continuance did not interfere with the use of the street; but, if no license had ever been issued, the city might demand a fee for permission for the new vaults irrespective of the length of time the old vaults had been in existence.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 668.*]

2. MUNICIPAL CORPORATIONS (§ 668*)—USE OF STREETS—EVIDENCE—PRESUMPTIONS.

Where plaintiff's right to construct new vaults under the sidewalk in the space occupied by old vaults without paying the city a license fee therefor depended on whether proper permission was granted for the construction of the old vaults, evidence that the old vaults had been in existence for 14 years was some evidence from which the city's consent thereto might reasonably be inferred; but the presumption thus raised was overcome by evidence that the city was, by Laws 1857, c. 446, authorized to issue permits for street vaults, and that, by ordinances of the city since 1859, application for permission to construct vaults was required to be in writing, and that there was no record of any such application or permission relating to said old vaults.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 668.*]

3. MUNICIPAL CORPORATIONS (§ 668*)—USE OF STREET—RECOVERY OF LICENSE FEE—DURESS.

Money paid by plaintiff to a city for the privilege of constructing vaults under a public street could not be recovered without establishing that the payment was involuntary and made under duress.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 668.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MUNICIPAL CORPORATIONS (§ 668*)—RIGHT TO USE STREETS—COMPENSATION
   —RECOVERY—DURESS.
    Where plaintiff contracted with the owner of certain lots to erect a
new building thereon and to construct vaults under the sidewalk in the
space occupied by old ones, and, in order to complete his contract, paid,
under protest, fees required by the city for permission therefor, he was
not entitled to recover such fees as paid under duress.
    [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
668.*]

Appeal from Trial Term, New York County.

Action by Robert J. Mahoney against the City of New York. From
a judgment on corrected verdict and from an order denying a new
trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN,
LAUGHLIN, MILLER, and DOWLING, JJ.

Loyal Leale, for appellant.
Jeremiah T. Mahoney, for respondent.

McLAUGHLIN, J. Action to recover $1,533, paid by the plaintiff
to the city of New York for the privilege of constructing vaults un-
der a public street, on the ground that such payment was involuntary
and under duress and protest.

The plaintiff in May, 1904, entered into a contract with the owner
of certain real estate situate at the corner of Hudson and Van Dam
streets in such city, to remove old buildings therefrom, and erect a
new one thereon. The contract also called for the construction under
the sidewalk, adjacent to the building to be erected, of vaults cover-
ing over 2,000 square feet and the payment by the contractor of all
license fees required by the city for that purpose. There were vaults
under the sidewalk adjacent to the old building, covering 1,533
square feet, and the contractor applied for a license to construct vaults
in the additional space required by his contract. The city refused to
issue the license unless the entire space were paid for, on the ground
that permission had never been given by the city to construct the old
vaults, for which reason their maintenance was illegal. The contrac-
tor paid the entire amount called for in order that he might complete
his contract with the owner within the time specified, protesting, how-
ever, against the payment required for the space occupied by the old
vaults, and, upwards of five years after the payment was made,
brought this action to recover the amount thus paid. At the conclu-
sion of the trial, the court directed a verdict for the plaintiff for the
amount paid, together with interest thereon, from the date of pay-
ment, upon which judgment was entered, and the city appeals.

[1] If a license had never been issued for the construction of the
old vaults, then the city rightly demanded a fee for the space they oc-
cupied, and this irrespective of the length of time they had been in
existence. If, however, a proper permit had been previously granted
for the construction of the old vaults, then the owner of the land had
a right to continue the new vaults in such spaces without an additional
permit, or paying compensation therefor, provided that the continu-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ance did not interfere with the street or impair its use by the public. Deshong v. City of New York, 176 N. Y. 475, 68 N. E. 880. The title to the street being in the city as trustee for the public, it has no power to grant any right or give any permission to occupy any part thereof if such occupation interferes with the public use. The public's right to use the street as such is absolute and superior to any other, and, whenever permission is given to occupy a public street or any part of it for a private purpose, such occupation is given and accepted with the distinct understanding that it is subordinate to the rights of the public. It is not claimed that the occupation of the vault space in question in any way interferes with the public use, so that the real questions presented are: (1) Had permission been given by the city to build the old vaults? (2) If so, was the payment involuntary and compelled by duress?

[2] No proof was offered at the trial that a permit had ever been issued for the construction of the old vaults. It was, however, admitted by the defendant, at the opening of the trial, that such vaults had been in existence for 14 years prior to the time the payment in question was made, and, although it did not appear that the city either knew of the construction or did not object to the use, this doubtless was some evidence from which the city's consent to the construction and use might reasonably be inferred. Babbage v. Powers, 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398; Jorgensen v. Squires, 144 N. Y. 230, 39 N. E. 373. In order to overcome this presumption, the defendant showed that by chapter 446 of the Laws of 1857 the city was authorized to issue permits for street vaults; that such authority has been continued to the present time; that, by an ordinance of the city since 1859, application for permission to construct vaults had to be made in writing, and signed by the person making the same; and that there was nothing in its records indicating that a permit had ever been granted for the construction of the old vaults.

The presumption that existed by reason of use without objection that a permit had been issued was completely overcome by this proof. This the plaintiff recognized, and he endeavored to prove the existence of the vaults since 1849, by showing that the old buildings which were torn down had been upon the premises since that date; and he attempted to prove that the vaults were constructed at the same time the buildings were, but his proof in this direction completely failed to establish that fact. The only witness who testified upon that subject stated that the cellar walls of the building and the walls of the vaults were both built of stone "rough rubble work," and, where the vault walls intersected with the walls of the cellar, they were "interlocked and bonded into each other"; and in his opinion both walls were built at the same time, with the exception of the walls of a certain oven, which seemed to have been a part of the vault walls. As to the wall of the oven, he admitted he could not form any opinion as to when it was built, and there was nothing to indicate to him that it was built at the same time as the others. His testimony falls far short of establishing that the vaults were built prior to 1857, and a finding to that effect would be without sufficient evidence to support it. His opinion, at most, is the merest conjecture.

**[3]** But, even if it be assumed that the use of the vaults for the time stated without objection on the part of the city were sufficient upon which to base an inference that a permit was given, I do not think in that case that the plaintiff was entitled to recover. No evidence was offered that the payment was made because of duress or coercion on the part of the defendant; in other words, the proof shows that it was a voluntary payment made by the plaintiff. Wolff v. City of New York, 92 App. Div. 449, 87 N. Y. Supp. 214, affirmed 179 N. Y. 580, 72 N. E. 1153.

**[4]** Plaintiff could not recover in any event without establishing that the payment was involuntary and made under duress. He was not arrested, nor was he threatened with arrest. All that was done on the part of the officials of the city was to refuse to issue a permit for the additional space unless a permit were taken for the entire space required. The plaintiff acquiesced in this and paid the amount demanded for the entire space. It is true he paid, under protest, the amount required by the city for the space occupied by the old vaults; but that did not establish coercion, nor did it show that the money was not voluntarily paid. Wolff v. City of New York, supra; Flower v. Lance, 59 N. Y. 603.

It is suggested in the respondent's brief that the answer admitted that the payment was involuntary and made under duress. I do not think the answer is subject to this criticism, when the whole of it is read and construed in connection with the eleventh paragraph, the allegations of which are at most conclusions.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.