THE CITY OF NEW YORK, Plaintiff, *v.* LOUISA M. GERRY, Defendant.

(Supreme Court, New York Special Term, June, 1917.)

City of New York — enforcement of ordinances of — vaults under sidewalks — nuisance — evidence.

The city of New York has the right to enforce an ordinance prohibiting vaults under the sidewalk without a permit; space occupied for vault purposes beyond that allowed under permits

constitutes a nuisance *per se* and in case of its continuance the owner of the building is liable to the city for maintaining the nuisance though the premises are in the possession of a lessee who is under obligation to make all repairs and to comply with all the ordinances and orders of the municipal authorities.

In an action by the city against the owner of a building, the vaults under which extended beyond the space permitted, the plaintiff cannot recover for the use and occupation of the street in the absence of proof as to what damages were suffered by reason of such use and occupation.

ACTION for maintaining nuisance.

Lamar Hardy, corporation counsel (J. A. Stover and Charles W. Miller, of counsel), for the City of New York.

Harris & Towne (William H. Harris, of counsel), for defendant.

NEWBURGER, J. · The defendant is the owner of the premises on the northwest corner of Fifth avenue and Forty-second street. She acquired the fee in 1891, subject to a lease to William H. Webb made in 1860 for a term of twenty-one years, with certain rights of renewal. The lessee had erected a building on the land, and he had the right to remove the same at the end of the final term. The lease required the lessee to level and pave the streets on which the lots were bounded, including the sidewalk, in such manner as the city should direct. On the 25th day of March, 1902, the lessee surrendered the lease and all the rights thereunder, the premises to be delivered on the 1st day of May, 1902. On the 10th day of April, 1902, the defendant leased the premises to one Walter J. Salomon from the 1st day of May, 1902, to the 30th day of April, 1922. The lessee covenanted to pay all charges for keeping sidewalks in order and to keep the premises in good

condition, but said lessee was not to make any alterations in said premises without the lessor's written consent, and to permit the lessor or his agents to enter and examine the condition of the premises. On the day the lease is dated the defendant and Salomon entered into an agreement for the alteration of the building. The agreement, after reciting that the lessor consents that the lessee, at his own expense, might make alterations and changes, provides that the lessee submit to Snook & Son, architects, all the plans and specifications for their approval. That the lessee will in all respects, in proceeding with said alterations, comply with all requirements of the public authorities and subject to the inspection and approval of said architects, and such alterations and additions were to become at once the property of the lessor, and before proceeding with the work the lessee was to file the plans with the lessor, the fees of the architects to be paid by the lessor and charged against the lessee. The lessor was to pay to the lessee for the said alterations the cost thereof, not exceeding $100,000. Before the alterations were made by Salomon there was an area about fifteen feet in width around the entire building, with a stone parapet balustrade. This area was about three feet below the level of the sidewalk and was covered by an iron grating. The basement of the building extended out to the old curb line on Forty-second street, underneath the area and sidewalk. On Fifth avenue the vaults extended out beyond the line in some places from six to fifteen feet. In May, 1902, Salomon filed alteration plans which transformed the hotel into an office building, with stores on the ground floor raised to the level of the sidewalk. The vaults were not changed and remained after the alterations as they were before; in fact, the vaults are now the same as

they were in May, 1902, and are used for storage and boiler space, and at the corner of the building for an art gallery. It is not disputed that throughout the alterations Mr. Snook, the architect and representative of the defendant, superintended the work and gave the certificate upon which the defendant made the payments, as provided in her agreement with Salomon. On the 6th day of July, 1876, October 3, 1876, and April 8, 1885, the department of public works issued permits for the construction of vaults in front of the premises hereinbefore referred to and for which payment was made. By reason of the widening of the roadway on Forty-second street the vault now, for a distance of 125 feet on Forty-second street and to a depth of 7½ feet, extends outside the curb line. From an examination of the maps it appears that the vaults in front of the premises within and without the present curb line occupy 4,920.24 square feet, while the permits issued are for 2,793.55. The area of vault space beyond the present curb line is 937½ square feet, while the permit is for 735 square feet. It is well settled that the city has the right to enforce an ordinance prohibiting vaults under the sidewalks without a permit. As was said in *Appleton* v. *City of New York,* 219 N. Y. 168: " It is a requisite preliminary to the construction of the vault because the land constituting the street is subject to all public uses, servitudes and appropriations essential to or consistent with its status as a street, and, in the interest of public safety, convenience, security and comfort is, within all legitimate street uses, by statutory grant, under the control, regulation and disposition of the public authorities, whose right to exact a payment or fee, in the process of regulation, for a permission or privilege of exercising in it a private possession or advantage consistent with the public uses, is undoubted. *Jorgensen*

v. *Squires*, 144 N. Y. 280; *City of Buffalo* v. *Stevenson*, 207 N. Y. 258; *Deshong* v. *City of New York*, 176 N. Y. 475; *Lincoln Safe Deposit Co.* v. *City of New York*, 210 N. Y. 34; *City of New York* v. *Rice*, 198 N. Y. 124. This right exists as to the owner of the land contiguous to the land of the street, irrespective of the ownership of the fee of the latter, because it is an element in the authorized regulation and supervision of the street.'' The space now occupied for vault purpose beyond the space allowed under the permits was and constituted a nuisance *per se.* See *City of New York* v. *De Peyster*, 120 App. Div. 765; affd., 190 N. Y. 547; *Deshong* v. *City of New York*, 176 id. 475. It is urged on the part of the defendant that the property is in the possession of the lessee Salomon, who was under the obligation to make all repairs and to comply with all the ordinances and orders of the municipal authorities; that therefore this action cannot be maintained against her, but should have been brought against the lessee. While it is true that where premises are leased with covenants on the part of the tenant to repair, the liability for injuries falls on the tenant, there are, however, exceptions: that is, a landlord is not relieved of responsibility in demising premises to a third person when a nuisance is maintained upon the premises, especially in the case of where he had actual or constructive notice. See *Matthews* v. *DeGroff*, 13 App. Div. 356; *Conhocton Stone R. Co.* v. *Buffalo, N. Y. & E. R. R. Co.*, 51 N. Y. 573. Furthermore, the nuisance complained of existed at the time of the surrender of the Webb lease, and at the time of the execution of the new lease to Salomon, and having permitted the nuisance to continue the defendant must be held liable for its maintenance. See *Ahern* v. *Steele*, 115 N. Y. 220. Judgment is directed for

plaintiff except no allowance will be made for the use and occupation of the street, for the reason that no proof was offered showing what damages were suffered by reason of such use and occupation.

Judgment accordingly.