Angel K. Jorgensen, Appellant, *v.* Flavius S. Squires et al., Respondents.

The legislature may authorize a limited use of sidewalks in front of build- ings in cities and villages, for cellar openings, and may delegate this power to the municipal authorities.

The authorities of the city of New York have power, derived from its ancient charter, as modified and enlarged by subsequent statutes, to permit the construction of cellarways extending into sidewalks under such reasonable regulations as they may prescribe. (§ 86, chap. 410, Laws of 1882.)

The city ordinances (Nos. 201, 202 of Revised Ordinances) which prohibit the construction of a cellar door extending more than five feet into a street, and directing that every uncovered entrance or flight of steps projecting into a street shall be inclosed with a railing, imply permis- sion to construct cellarways within the limit, and not in other respects transgressing the ordinances.

In an action against the owner and lessees of certain premises in the city of New York, to recover damages for injuries alleged to have been caused by the giving way of cellar doors in front of the premises, upon which plaintiff was standing, it appeared that the cellarway covered by the doors projected about five feet into the street and had so existed for more than twenty years. The trial court charged in sub- stance that the cellarway was an unlawful structure and a nuisance; that if the accident happened as claimed by plaintiff, defendants were liable irrespective of any question of negligence. *Held*, error; that such a long user without, so far as appeared, any objection having been made by the city authorities, was presumptive evidence of consent on their part to the construction of the cellarway, and this, without regard to the city ordinances.

(Argued December 18, 1894; decided January 15, 1895.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made December 16, 1892, which sustained defendants' exceptions, set aside a verdict in favor of plaintiff and granted a new trial.

This action was brought to recover damages for injuries received by plaintiff through falling down the cellar steps, which were covered by wooden doors and led from the sidewalk to the basement of premises situated on Third avenue, in the city of New York. The lessees and occupants and owners of the property were made parties defendant.

The facts, so far as material, are stated in the opinion.

*E. Countryman* for appellant. The cellarway, of whatever dimensions, was a nuisance. (*Whittaker* v. *E. A. R. R. Co.*, 5 Robt. 650; *Dygert* v. *Schenck*, 23 Wend. 446; *Clifford* v. *Dam*, 81 N. Y. 52; *Creed* v. *Hartman*, 29 id. 591, 597; *Lawrence* v. *Mayor*, 2 Barb. 577; *Congreve* v. *Morgan*, 18 N. Y. 79, 85.) The cellarway, covered by wooden doors, was prohibited by statute. (*People* v. *Mayor, etc.*, 59 How. Pr. 333.) Assuming that such cellarway was permissible, in the absence of a license it was a nuisance. (*Irvine* v. *Wood*, 51 N. Y. 224; *Clifford* v. *Dam*, 81 id. 56; *Jennings* v. *Van Schaick*, 108 id. 130; *Babbage* v. *Powers*, 130 id. 281; Penal Code, § 385; *Wasson* v. *Pettit*, 49 Hun, 168.) The ordinances offered by respondents do not justify the cellarway. (*Cohen* v. *Mayor, etc.*, 113 N. Y. 533; Wood on Nuis. § 274.)

*Douglas A. Levien, Jr.*, and *Robert A. Johnston* for respondents. The corporation of the city of New York have the power to authorize, and have authorized, the erection and maintenance of openings into the basement of buildings with steps from the sidewalk thereto, similar to those in the case at bar, but limit the encroaching into the street or walk more than five feet. (*Britton* v. *Mayor, etc.*, 21 How. Pr. 251; Laws of 1882, chap. 410, § 84; *Babbage* v. *Powers*, 130 N. Y. 281; *Village of Port Jervis* v. *F. N. Bank*, 96 id. 550; *Wolf* v. *Kilpatrick*, 101 id. 146; *Nolan* v. *King*, 97 id. 565; *Jennings* v. *Van Schaick*, 108 id. 530; *Robbins* v. *Chicago*,

4 Wall. 657; *Betty* v. *Gillmore*, 16 Penn. St. 463; *Bush* v. *Johnston*, 23 id. 209; *Proctor* v. *Harris*, 4 C. & T. 337; *Buesching* v. *S. L. G. L. Co.*, 6 Cent. L. J. 458; Dillon on Mun. Corp. 532, § 553; *Nelson* v. *Godfrey*, 12 Ill. 22; *O'Linda* v. *Lathrop*, 21 Pick. 292.) While what is a public nuisance is a question of law for the courts, the existence of facts which the court may declare sufficient to constitute a public nuisance is a question of fact for the jury. (*Hart* v. *Mayor, etc.*, 3 Paige, 218; *Gridley* v. *City of Bloomington*, 68 Ill. 47; *Nelson* v. *Geoffery*, 12 id. 20; *Clark* v. *Frey*, 8 Ohio St. 358; Dillon on Mun. Corp. § 699; Cooley on Torts, 748.)

ANDREWS, Ch. J. The jury found on conflicting evidence that the plaintiff fell into a cellarway in front of the premises on Third avenue in the city of New York, owned by the corporation defendant and occupied by the other defendants as lessees. The cellarway was projected into the sidewalk a distance of five feet from the building line, and the opening was covered with wooden doors. The plaintiff testified that she was standing on these doors looking into a show window when they fell, and she fell with them into the opening below and was bruised and otherwise injured. The learned trial judge took from the jury the question whether the cellarway was improperly constructed, or improperly and carelessly maintained, and charged them that if the accident happened the defendants were liable, irrespective of negligence, for any injuries sustained by the plaintiff, on the ground that the cellarway was an unlawful structure and a public nuisance, it having been constructed in the public street without authority, and he submitted to the jury two questions only: the question whether there was such an occurrence as that claimed by the plaintiff, and, second, the amount of damages. The plaintiff, in her complaint, alleged that the defendants unlawfully maintained the cellarway, and that it extended more than five feet from the street line into the sidewalk, and was insecurely covered, and constituted a nuisance. The answer denied these

allegations.  The question whether the cellarway was an unlawful structure was litigated on the trial, the plaintiff maintaining that it was constructed without legislative or other authority, and the defendants insisting that it was built and maintained under the permission, express or implied, of the city authorities.  There was no question raised upon the pleadings, and although the permission of the city to construct and maintain the cellarway was not pleaded as strictly as it should have been, regarding the action as an action for nuisance (*Clifford* v. *Dam*, 81 N. Y. 56), the parties having tried the case upon the assumption that the pleadings were sufficient, the objection that the authority of the city should have been affirmatively alleged in the answer cannot now be taken.  If the trial court erred in charging the jury that the cellarway was an unlawful structure, the new trial was properly awarded and the order granting a new trial must be affirmed.  We have arrived at the conclusion that the charge in this respect was erroneous, and this renders it unnecessary to consider the other grounds upon which the order for a new trial is sought to be supported.  There can be no controversy as to the rule that an unauthorized obstruction or excavation in a public street, impairing its safety, constitutes a public nuisance and subjects the person or body creating or maintaining it to indictment and to liability in a civil action to any person sustaining special injury therefrom.  The space occupied for sidewalks in city or village streets is as much a part of the street as the part used for horses and vehicles.  The owner of a building abutting on a street may use the sidewalk in front of his premises as any other citizen, and, in addition, for the usual purposes of his business, although it may occasion temporary obstruction, provided he does not interfere unreasonably with the public right.  There are many special and incidental uses of the sidewalk founded upon vicinage and business necessity permitted to him by implication, beyond the bare right to pass and re-pass upon it.  He may load and unload his goods in front of his store, subject to municipal regulation, and for this he needs no authority beyond that implied from common usage and the

purposes for which streets are opened and dedicated, and many other similar privileges might be mentioned.

But an adjoining owner cannot, upon the plea of convenience or necessity, make an excavation in the street in front of his premises or construct a cellarway extending into the sidewalk, except by permission of a competent authority. The authority to construct vaults under sidewalks, or to make openings therein for a cellarway, or to inclose an area within the line of a street, is not an incident of ownership of the adjacent premises, or implied from such ownership, however convenient or even necessary the exercise of such an authority may be to their full enjoyment. The implication of such a right, as one annexed to the land and arising out of ownership merely, would or might lead to embarrassing conflicts and interfere with the control and regulation of the streets which in the interest of the public is reposed in public authorities. But it is competent for the legislature to authorize a limited use of sidewalks in front of buildings in cities and villages for stoops or cellar openings, or underground vaults, for the more convenient and beneficial enjoyment of the adjacent premises. While such uses may restrict somewhat the free and unembarrassed use of the streets for pedestrians, the general interests are subserved by making available to the greatest extent valuable property, increasing business facilities, giving encouragement to improvements and adding to taxable values.

We do not understand that the ruling on the trial, that the cellarway in question was an unlawful structure, proceeded upon any denial of the power of the legislature, or of the municipality as representing it, in this matter, to authorize the construction of the cellarway in question. The assumption made and upon which the charge was based, was that in fact it had not been authorized by the city authorities. The cellarway had existed at the place in question for more than twenty years, and the defendant corporation, when the ground lease fell in 1889, purchased the building which had been erected by the tenant to which this cellarway was appurtenant, and leased the premises in their existing state to the other

defendants. Such a long user without, so far as appears, any objection having been made to the cellarway by the authorities of the city, was evidence from which their consent to its construction might reasonably be inferred. (*Jennings* v. *Van Schaick,* 108 N. Y. 530; *Babbage* v. *Powers,* 130 id. 281; *Chicago City* v. *Robbins,* 2 Black, 418.) It is a matter of observation that openings for cellarways extending into the sidewalk in cities or villages in front of business buildings are very common. They afford access to the basements of such buildings and render them much more valuable for business purposes. It would be an unnatural inference that, in the city of New York, where so many of such openings are found, they exist by sufferance merely and were tolerated, but not permitted, by the public authorities. In the absence of affirmative proof of permission, it should be implied, if there is nothing to disprove it, either in the character of the structure or in the actual circumstances disclosed. It is unreasonable to suppose that a usage so general and unchallenged did not have its origin in municipal consent. We have said that it seemed to be assumed on the trial that the city authorities had power to permit the construction of cellarways extending into the sidewalk, under such reasonable regulations as they might prescribe. There can, we think, be no doubt of the existence of this power. The broad powers for purposes of municipal government possessed by the common council of the city of New York, derived from its ancient charters and modified and enlarged by subsequent statutes, include, to the fullest extent consistent with constitutional limitations, the power to control and regulate the public streets.

By section 86 of the Consolidation Act of 1882, the common council is invested with power to enact ordinances on a great variety of subjects, and, among others, by sub. 3, "to regulate the use of sidewalks and prevent the extension of building fronts and house fronts within the stoop line." This power was also given by the charter of 1873, and doubtless by still earlier legislation.

It is said that no ordinance has been enacted prescribing

that the owner of a building may construct a cellarway extending to any distance into the sidewalk. It does not appear that there is any ordinance granting such power in express language. But such permission is implied in the ordinances Nos. 201 and 202. (See vol. of Revised Ordinances.) The first prohibits the construction of a cellar door " which shall extend more than one-twelfth part of any street, or more than five feet into any street," and section 202 prescribes that ".every entrance or flight of steps projecting beyond the line of the street and descending into any cellar or basement story, \* \* \* where such entrance or flight of steps shall not be covered, shall be inclosed ·with a railing," etc. These prohibitions imply permission to construct cellarways within the limit of five feet, not in other respects transgressing the ordinances. The evidence is convincing and undisputed that the city officials, architects and owners have acted upon this construction of the ordinances. No express permits have been issued by the city for more than 20 years, and builders and architects regarded them as unnecessary where the proposed construction was within the limit and of the character specified. Sections 33 and 64 of the Revised Ordinances relate to a different subject, and in no respect qualify the terms of the ordinances, sections 201 and 202, or the implications following from them. We are of the opinion that there was evidence tending to show that the construction of the cellarway in question was authorized by the city, and that the charge that it was an unlawful structure and a nuisance *per se*, was erroneous. The question whether it was carefully constructed or maintained is not presented.

If, as claimed since the argument, section 201 of the ordinance was not put in · evidence, and should, therefore, be disregarded, it would not, we think, change the result.

The order of the General Term reversing the judgment and directing a new trial was correct, and it should be affirmed and judgment absolute given for the respondent on the stipulation.

All concur, except HAIGHT, J., not sitting.

Ordered accordingly.