MARY LANE, Appellant, *v.* THE CITY OF SYRACUSE and SYRACUSE AND EAST SIDE RAILWAY COMPANY, Respondents.

*Negligence — excavation in a street by a railway company, fenced in — liability of the company and of the city.*

In an action against a city and a street railway company for the recovery of damages for personal injuries, it appeared that the railway company, being authorized by the common council of the city to build its road on certain streets on grades to be approved by the city authorities, had dug a trench in a street, and laid ties therein and on the ties the track, at which time the commissioner of public works of the city notified the company to suspend work, which the company did, and built a fence around the trench, which remained there from about December 4, 1894, to July 20, 1895, awaiting the establishment of the grades by the common council.

On July 18, 1895, the plaintiff was driving down a steep incline leading to the fence when the hold-back strap of the harness broke; the horse started, the wagon collided with the fence and the plaintiff was thrown out and injured.

The evidence was such that the jury might have found that the fence was a proper one, or was an improper one, for the purpose for which it was built.

*Held*, that the complaint should not have been dismissed;

That, while the company had lawfully dug the trench, a question for the jury was presented as to whether it was negligent in leaving the trench open and protected as it was;

That a question for the jury was also presented as to whether the city authorities were negligent in suspending the work and allowing the street to remain in such condition for such a length of time.

APPEAL by the plaintiff, Mary Lane, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Onondaga on the 20th day of March, 1896, upon the dismissal of the complaint upon the merits directed by the court after a trial before the court and a jury at a Trial Term of the Supreme Court held in and for the county of Onondaga.

*M. E. Driscoll,* for the appellant.

*Charles E. Ide,* for the city of Syracuse, respondent.

*W. S. Andrews,* for the Syracuse and East Side Railway Company, respondent.

FOLLETT, J.:

This action was begun October 21, 1895, to recover damages for personal injuries caused, it is alleged, solely by the negligence of the defendants. The defendants appeared by different attorneys and each answered for itself. The general direction of Oak street is northerly and southerly, and it is crossed by Henderson street, which is an east and west street. The common council of the city of Syracuse authorized the Syracuse and East Side Railway Company to construct its line in Oak street from its intersection with Burnet avenue, thence northerly in Oak street to Henderson, thence east in Henderson to Elm street, upon grades to be approved by the city authorities.

In December, 1894, the railway company dug a trench in Oak and Henderson streets about nine feet wide, and varying in depth at different points, and laid therein ties, and on the ties the track. Oak and Henderson streets are each about thirty feet wide between curbs, and the trench being nine feet wide, leaves passageways for carriages ten and one-half feet wide on both sides of the trench in both streets. At the junction of these streets the trench was from eight to twelve inches deep, the upper surfaces of the rails being about six inches below the grade of the streets.

December 4, 1894, the commissioner of public works served upon the railway company this notice:

" DEPARTMENT OF PUBLIC WORKS, CITY HALL,
    " SYRACUSE, N. Y., *Dec.* 4, 1894.

" SYRACUSE & EAST SIDE R. R. Co.:

" GENTLEMEN.— You are hereby notified to suspend work of laying your tracks and grading along Oak street, in compliance with a resolution passed by the common council at their regular meeting held Dec. 3, '94.                H. B. JOHNSON, *Com.*"

At the time of the service of this notice the spaces between the ties were not filled.

Pursuant to this notice the railway company stopped work and built a fence around the curve which the railway made by leaving Oak and turning into Henderson street. This fence was to prevent persons approaching the curve on either street from driving into the unfilled trench. The city did nothing to protect the trench. This condition of these streets at their intersection continued until July 20 or 22, 1895. The city authorities took no steps to establish a suitable grade until July 1, 1895, when a new one was established, and July 14, 1895, notice thereof was given to the railway company, which, on the twentieth or twenty-second of that month, began to complete its road at the junction of these streets.

Immediately north of Henderson street there is a sharp grade in Oak street, descending to the south, which is described by some of the witnesses as a sharp pitch, or quite a hill.

During the forenoon of July 18, 1895, the plaintiff was riding in a democrat wagon drawn by one horse, described as gentle, which she was driving. She was traveling south on Oak street, and when near Henderson street the near hold-back strap broke; the wagon crowded the horse, which started to go at a somewhat rapid gait, and the plaintiff attempted to turn to the east into Henderson street so as to avoid the steep grade and rough roadway on the right side of the trench on Oak street. In making this attempt her wagon collided with the fence surrounding the curve, the wagon upset, and the plaintiff was thrown out and injured.

At the conclusion of the evidence the complaint was dismissed as against the railway company, on the ground that while engaged in constructing its work, pursuant to legal authority, it was stopped by the city authorities and prevented from completing its road as planned, and it was not liable for the consequences.

As to the city it was held that the evidence was insufficient to support a verdict that it was negligent in leaving the street in the condition in which it was. The plaintiff asked the court to submit to the jury the question whether the city was negligent in permitting the trench to be constructed and remain open, surrounded by a fence, for the length of time described by the evidence — nearly eight months. The plaintiff also asked to have submitted to the jury whether the railway company was guilty of negligence in leaving the streets for this length of time in the condition described.

The plaintiff also asked to have the question submitted whether the fence was a sufficient barrier to prevent travelers from falling into the trench. These requests were refused, and the plaintiff excepted.

The railway company was rightfully engaged in constructing its road in the streets under the authority granted by the common council of the city, and it was compelled to abandon its work by command of that authority.

The railway company was not originally a trespasser in entering upon the street for the purpose of constructing and maintaining its road, for it was duly authorized to do this by the authorities of the city. In case a person or corporation, without authority, erects an unlawful structure in the street, which is dangerous to persons using the street, it is a nuisance, and the corporation is liable for damages occasioned by it, though erected with the greatest care. This case was not brought or tried on the theory that the railway company was unlawfully in the street — a trespasser — but on the theory that it being lawfully there it was negligent in the manner in which it prosecuted and left its work. Undoubtedly a corporation having authority to erect and maintain a structure in a public street may so construct and maintain it that it may be a public nuisance, but the court was not asked to hold as matter of law that this structure was a public nuisance, nor was the court requested to submit to the jury, as a question of fact, whether a nuisance existed. As before stated, no such issue is involved in this case. An action for damages occasioned by a public nuisance is quite different from an action for damages occasioned by negligence.

The cases, of which *Babbage* v. *Powers* (130 N. Y. 281) and *Jorgensen* v. *Squires* (144 id. 280) are types, are not in point. Under the evidence it was a question of fact for the jury to determine

whether the railway company was negligent in leaving this trench open in the manner in which it did, and protected as it was by this fence. There was evidence from which the jury might have found that the fence which guarded the curve was a proper and sufficient barrier, or an improper and insufficient one, negligently erected for the purposes it was intended to serve.

The authorities of the city of Syracuse knew of the condition of Oak and Henderson streets, as is shown by the resolution of the common council adopted December 3, 1894, by the notice served December 4, 1894, by the commissioner of public works, and by the subsequent action of the common council in July, 1895, and, besides, the condition had existed for nearly eight months. The city had notice, and it had more — knowledge — of the condition of these streets. A city is required to exercise due care to keep its streets safe for the use of persons lawfully traveling thereon, and if it neglects this duty a person who, not contributing to the accident, is injured by reason of such negligence, may recover the damages sustained, or in case a city permits a corporation or an individual to use its streets for some lawful purpose and it negligently permits such corporation or person to make the streets unsafe, it is liable for the injury sustained by a traveler who, without negligently contributing to the accident, is injured. (*Sewell* v. *City of Cohoes,* 75 N. Y. 45; *People ex rel. Markey* v. *City of Brooklyn,* 65 id. 349; Dill. on Mun. Corp. [4th ed.] § 1037; Thomas on Neg. 972 *et seq.*)

In the case at bar the city had power to prescribe how and when the railway should lay its tracks and complete its work, which power it exercised and suspended the work of the railway for nearly eight months, leaving the streets during this period in the condition described. Upon this evidence the jury might have found the city negligent. Whether the city was negligent, and, if so, was its negligence the cause of the accident, were, with the question whether the plaintiff negligently contributed to the accident, questions of fact which should have been submitted to the jury.

The judgment should be reversed as to both defendants and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed as to both defendants and a new trial ordered, with costs to abide the event.