(April 14, 1911.)

## CITY OF LEWISTON, a Municipal Corporation, Respondent, *v.* S. G. ISAMAN, Appellant.

[115 Pac. 494.]

MUNICIPAL CORPORATION—SIDEWALK—DOORS IN—PERSONAL INJURY—LIABILITY OF CITY—COMMON-LAW LIABILITY—PAYMENT OF DAMAGES BY CITY—RECOVERY OVER BY CITY—STATUTE LAW—ORDINANCES—AUTHORITY OF CITY OVER SIDEWALK—AUTHORITY OVER AREA-WAYS AND DOORS IN SIDEWALK—MAY REGULATE—DUTY TO KEEP SAFE—LIABILITY OF ABUTTING LOT OWNER—ORDINANCES—WILFUL NEGLECT—GROSS CARELESSNESS—NUISANCE PER SE—LANDLORD AND TENANT.

(Syllabus by the court.)

1. The owner of a city lot is not liable, either at common law or by the terms of the charter of the city of Lewiston, for injuries received by a third person because of a defect in the sidewalk in front of his property, where such defect was not caused by the lot owner's wilful neglect of a duty enjoined by law or gross negligence.

2. Under sec. 5 of the city charter in force at the time of the accident involved in this case, the city had power to control all streets, sidewalks, and public grounds within its limits, dedicated

to a public use; and by sec. 7 of said charter, said city was authorized to provide for clearing, opening, improving, constructing and repairing streets, alleys, sidewalks, etc., also to regulate cellar-ways, cellar-lights and all sidewalks within the city.

3. Under sec. 8 of said charter, the city council, when it deemed it expedient to cause sidewalks to be constructed, repaired or kept in order, had the power to provide for the same by ordinance; and if any person owning real estate within the city should refuse or neglect to build or repair sidewalks according to the requirements and provisions of such ordinance, it was made the duty of the city council to cause such walks to be constructed or repaired and pay for the same out of the general funds of the city, and thereafter to assess such expense against the real property along said sidewalks and collect the same as other taxes are collected.

4. Sec. 17 gives the city authority to prevent injury and to cause any nuisances to be abated, and the power to abate public nuisances may be summarily exercised.

5. Sec. 93 makes the city liable to anyone for loss or injury to person or property growing out of any casualty or accident happening to any such person or property on account of the condition of any street or public ground therein; but said section does not exonerate any officer of the city or any other person from such liability when such casualty or accident is caused by the wilful neglect of a duty enjoined by law, or by gross negligence or wilful misconduct of such officer or any other person.

6. The word "regulate" as used in said section 7 means to put or keep in order, and to regulate sidewalks includes the control thereof.

7. The provisions of said sec. 7 expressly authorized the construction of cellar-ways and the placing of doors thereover, and it is the duty of the city to keep such doors, which are a part of the sidewalk, in repair, if the owner fails to do so, and assess the expense thereof to the abutting lot.

8. The obligation and duty to keep the streets and sidewalks in a safe condition is placed by the provisions of its charter upon the city, and the city has been provided by said charter with authority and power to discharge such duty, and in case it fails to perform such duty, the city is made expressly liable, under the provisions of sec. 93 of the charter, for any damage to person or property.

9. From the nature of the duty required of the city and the character of the ordinance in question, the only liability resting upon the property owner is that which the ordinance itself imposes.

10. If an injury occurs on account of the wilful neglect of a duty enjoined by law, or the gross negligence or wilful miscon-

duct of the lot owner, he is liable to the person injured and is liable over to the city if the city should pay the damages for such injury.

11. The rule of law applicable to obstructions placed in streets which are nuisances *per se* is not applicable to the facts of this case.

12. Said cellar-way and doors in the sidewalk were maintained by authority of law and said doors were a part of the sidewalk, and under the provisions of sec. 3659, Rev. Codes, cannot be deemed a nuisance.

13. The defendant was not permitted to appear and defend in the case of *McLean v. City of Lewiston,* hence was not bound by the judgment entered in that case.

14. Where an abutting owner has leased his entire premises and possession thereof is given to his tenants, he is not liable for personal injuries caused by the carelessness or negligence of the tenants in keeping the sidewalk in front of such premises in proper repair.

APPEAL from the District Court of the Second Judicial District, in and for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action to recover over by the city for personal injuries. Judgment for plaintiff. *Reversed.*

Johnson & Stookey and Eugene O'Neill, for Appellant.

"It is universally admitted that there is no common-law liability of abutting property owners to repair sidewalks." (*Browning v. City of Springfield,* 17 Ill. 143, 63 Am. Dec. 355.)

There is nothing in our statutes that changes the common law in this respect.

A city authorized "to regulate the use of sidewalks" may authorize the building by property owners of openings for cellar-ways in the sidewalks." (*Jorgensen v. Squires,* 144 N. Y. 280, 39 N. E. 373.)

The authority to construct cellar-ways in the city of Lewiston is expressly authorized by the legislature when it conferred the power and the duty upon the city by its charter to control and govern and establish rules regulating "cellar-

ways.'' The acceptance of its charter precludes the city from now asserting that cellar-ways are not lawful or from shirking the responsibility and absolute duty of controlling, governing and regulating the same. (*Russell v. Village of Canastota,* 98 N. Y. 496–503; *Rider v. Clark,* 132 Cal. 382, 64 Pac. 564.)

''Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.'' (Sec. 3659, Rev. Codes; *Adams v. Fletcher,* 17 R. I. 137, 33 Am. St. 859, 20 Atl. 263; *Jorgensen v. Squires,* 144 N. Y. 280, 39 N. E. 373; *Morrison v. McAvoy,* 70 Pac. 626; *Wilhelm v. City of Defiance,* 58 Ohio St. 56, 65 Am. St. 745, 5 N. E. 18, 40 L. R. A. 294.)

If the person who is sued by the city did not have notice or knowledge of the suit against the city, the city in its action must establish against such person all the actionable facts. It must make out anew the case which the injured person made out against it; and, in addition, the fact that the person whom it is suing was the author of the defect and was guilty of wrong or negligence. (15 Am. & Eng. Ency. of Law, 2d ed., 489, 490; *Robbins v. Chicago,* 4 Wall. (U. S.) 657, 18 L. ed. 427; *Washington Gas Light Co. v. District of Columbia,* 161 U. S. 316, 16 Sup. Ct. 564, 40 L. ed. 712; *Catterlin v. Frankfort,* 79 Ind. 547, 41 Am. Rep. 627; *Milford v. Holbrook,* 9 Allen (Mass.), 17, 85 Am. Dec. 735; *St. Joseph v. Union R. Co.,* 116 Mo. 636, 38 Am. St. 626, 22 S. W. 794; *Littleton v. Richardson,* 34 N. H. 179, 66 Am. Dec. 759; *Port Jervis v. Port Jervis First Nat. Bank,* 96 N. Y. 550; *City of Seattle v. N. P. Ry. Co.,* 47 Wash. 552, 92 Pac. 411.)

The lease of the whole of a building and of the cellar under it includes a lease of the excavation under the sidewalk through which the cellar is reached, and also of the doors over that excavation. (*Boston v. Gray,* 144 Mass. 53, 10 N. E. 509; *Wasson v. Petit,* 117 N. Y. 118, 22 N. E. 566, 5 L. R. A. 794; *Rider v. Clark,* 132 Cal. 382, 64 Pac. 564.)

A landlord is not liable for damages resulting from the dangerous condition of leased premises, unless the premises were in a dangerous condition when leased, or the duty of keep-

ing them in repair rests upon him. (*Ahern v. Steele,*
115 N. Y. 203, 12 Am. St. 778, 22 N. E. 193, 5 L. R. A. 449;
*City of Lowell v. Spalding,* 58 Mass. 277, 50 Am. Dec. 775;
*Fisher v. Thirkell,* 21 Mich. 1, 4 Am. Rep. 422; *Johnson v.
McMillan,* 69 Mich. 36, 36 N. W. 803; *Ward v. Hinkleman,*
37 Wash. 375, 79 Pac. 956; *City of Peoria v. Simpson,* 110
Ill. 294, 51 Am. Rep. 683; *Lindstrom v. Penn. Co. etc.,* 212
Pa. 391, 61 Atl. 940.)

Fred E. Butler, Eugene A. Cox and Isham N. Smith, for
Respondent.

"A municipal corporation which has been compelled to pay
the judgment recovered against it for damages sustained by
an individual by an obstruction, defect or excavation in the
sidewalk or street of such corporation, has an action over
against the person who negligently or unlawfully created the
defect that caused the injuries." (*Canandaigua v. Foster,*
156 N. Y. 354, 66 Am. St. 575, 50 N. E. 971, 41 L. R. A. 554;
*Brooklyn v. Brooklyn Street Ry. Co.,* 47 N. Y. 475, 7 Am.
Rep. 469; *Pine Hill Coal Co. v. Harris,* 7 Ky. Law, 519; 1
Jaggard on Torts, par. 69; *Rochester v. Campbell,* 123 N. Y.
405, 20 Am. St. 760, 25 N. E. 937, 10 L. R. A. 393; *Minne-
apolis Milling Co. v. Wheeler,* 31 Minn. 121, 16 N. W. 698;
1 Parsons on Contracts, 4th ed., p. 36; *Village of Carterville
v. Cook,* 129 Ill. 152, 16 Am. St. 250, 22 N. E. 14, 4 L. R. A.
721; *Farwell v. Becker,* 129 Ill. 261, 16 Am. St. 267, 21 N.
E. 792, 6 L. R. A. 400; *Old Colony Ry. Co. v. Slavens,* 148
Mass. 363, 12 Am. St. 558, 19 N. E. 372; *Sherwood v. Dun-
bar,* 6 Cal. 53; *Richter v. Henningsan,* 110 Cal. 530, 42 Pac.
1077; 2 Smith's Modern Law of Mun. Corp., sec. 1305.)

A landlord cannot, under any circumstances, by any kind
of a lease, relieve himself of the obligation which he owes to
the public. (*Jessen v. Sweigert,* 66 Cal. 182, 4 Pac. 1188.)

Isaman could not substitute his tenant as an obligee under
this contract. (*Swords v. Edgar,* 59 N. Y. 28, 17 Am. Rep.
295; *Pretty v. Bickmore,* L. R. 8 C. P. 401; *Helbig v.
Slaughter,* 95 Ill. App. 623; *City of Lewiston v. Booth,* 3 Ida.

692, 34 Pac. 809; *Horn v. Boise City Canal Co.*, 7 Ida. 640, 65 Pac. 145; *Dygert v. Schenck*, 23 Wend. 446, 35 Am. Dec. 575; *Seattle v. Puget Sound Imp. Co.*, 47 Wash. 22, 125 Am. St. 884, 91 Pac. 255, 12 L. R. A., N. S., 949, 14 Ann. Cas. 1045; *Canandaigua v. Foster*, 156 N. Y. 354, 66 Am. St. 575, 50 N. E. 971, 41 L. R. A. 554.)

By the common law and by the statutes of Idaho, one who maintains a nuisance on the public streets is liable for injuries occasioned thereby, and no permission can be implied or granted to maintain such nuisance. (*City of Lewiston v. Booth*, 3 Ida. 692, 34 Pac. 809; *Horn v. Boise City Canal Co.*, 7 Ida. 640, 65 Pac. 145; *City of Denver v. Soloman*, 2 Colo. App. 534, 31 Pac. 507; *Eaton v. City of Weiser*, 12 Ida. 544, 118 Am. St. 225, 86 Pac. 541.)

The only possible effect which the refusal to let Isaman aid in defending could have is to cause the city to relitigate the question of primary and secondary liabilities in the present case. This was stipulated. (22 Cyc. 99; *Washington Gaslight Co. v. District of Columbia*, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. ed. 712, 715.)

SULLIVAN, J.—This action was brought by the city of Lewiston against Isaman, the defendant and appellant, to recover the sum of $17,944.20 with interest thereon, and is based upon a judgment obtained by Miriam W. McLean and her husband against the city in the sum of $12,000 because of personal injuries received by reason of defective doors placed in the sidewalk in front of said Isaman's business building in the city of Lewiston. The said case of *McLean v. The City of Lewiston* was decided by this court on appeal June 5, 1902, and is reported in the 8th Idaho at page 473, 69 Pac. 478, to which reference is made as explanatory, to some extent, of the facts in issue in this case. The city of Lewiston paid the judgment in that case and brought this action to recover the amount so paid from this defendant.

The defendant in his answer admits some of the allegations of the complaint and denies others; denies that he was maintaining any business on lots 11 and 12, block 29, in the

city of Lewiston, those being the lots on which the sidewalk was situated where Mrs. McLean received her injuries; admits that he owned said lots and avers that with the knowledge, consent and acquiescence of the city, he built over the cellar-way where said doors were placed, in the sidewalk, two strong, durable and safe cellar doors, and fastened the same with strong, durable hinges, and had thereunder good and sufficient support, and that the same were safe for pedestrians to walk upon; avers that on January 1, 1900, he leased said premises on said lots so that said tenants had the right to the exclusive use, possession and control of said building on said lots, cellar-way and doors and of all parts thereof, from January 1, 1900, to January 1, 1901, embracing and including the time of the alleged accident to Mrs. McLean, which occurred February 13, 1900; that said cellar-way under said sidewalk and said doors thereon were leased to one Fountain and by the terms of his lease he had the right to the exclusive use, occupation and control of all parts of said property, and that it was his duty to keep the same and every part thereof in good, sound, safe and suitable condition and repair, and that defendant was not required to keep the same in condition and repair from the said January 1st, 1900, until long subsequent to the date of said accident; that at the time of leasing said property to Fountain, the doors in question were in good repair. He also averred that he was refused by the duly authorized attorneys of the city, in the case of *McLean v. City of Lewiston*, the right to defend or appear therein, on two specific grounds, to wit:

"(a) That the theory of the defense of said action held by said attorney employed by this defendant, S. G. Isaman, might be different from and conflict with the theory of said defense held by said R. E. McFarland and said S. L. McFarland;

"(b) That this defendant, S. G. Isaman, was in no way interested in said suit and was probably not liable."

The answer alleges that defendant resided continuously from several months prior to January 1, 1900, until several months subsequent to the 13th of February, 1900, about four

miles from the city of Lewiston and had no notice or knowledge of any defective condition of said doors; also plead the statute of limitations.

Upon the issues thus made the case was tried by the court without a jury and findings of fact made and judgment entered in favor of the city, for the sum of $8,700 with interest and costs. An appeal was taken from the judgment and also from the order denying a new trial. The two appeals were consolidated and are presented as one.

Some of the facts were stipulated and oral and documentary evidence was introduced on the trial.

The record shows that the defendant owned the lots abutting on the sidewalk and street under which sidewalk the area-way was excavated and over which in the sidewalk the doors referred to were placed. Said doors and area-way were used for taking fuel and other material into the cellar under said buildings; that said area-way was excavated and doors placed thereon about November, 1899, about three months prior to the McLean accident; that said entire building and cellar had been rented by the defendant, the greater portion of the cellar and area-way and the second and third stories of said building to a man by the name of Fountain, and one of the rooms on the first floor to a baker and the other to a cigar-maker. Under the lease to Fountain he was to furnish heat for the entire building from the heating apparatus in said cellar. The furnace or heater in said cellar was for that purpose. Said area-way was about three feet in width, six feet in length and seven feet in depth, and was under said sidewalk and connected with the basement or cellar. The doors thereon extended partly across the sidewalk from the outer edge thereof to within about eighteen inches or two feet of the inner side of the walk and building, and were about eighteen inches wide and made of plank, were hung to the sidewalk with strap hinges about eight inches long and three inches wide, with two hinges on each door, and a chain so attached as to keep the doors from falling flat on the sidewalk when opened. The sidewalk, at that time, was constructed of plank.

A few days before the happening of the accident, it appears that Fountain broke one or both of the hinges on one of the doors and did not repair them nor report the fact of their being broken to Isaman. Isaman lived in the country about four miles from the city.

On the 9th of February, 1900, the city council passed what is known as ordinance No. 266, and commonly known as the sidewalk ordinance. Sec. 63 of that ordinance is as follows:

"Openings in sidewalks for receiving and discharging fuel and merchandise shall not extend more than half the width across the sidewalk. They shall be covered with two trap doors which, when open, shall have a bar across at each end to prevent persons falling in. The doors while open must not be left without a covering of wood or metal being placed over them if it becomes necessary for the person in charge to leave the opening for more than ten minutes."

On about that date, Mr. Tannahill, who was a councilman of said city and street commissioner, accompanied by the marshal, went about the city examining the doors in the sidewalks. It appears that he saw said doors on that day and spoke to Mr. Isaman about the ordinance. Tannahill testified as follows: "I can't say that I did call his (Isaman's) attention to the condition of the doors at that time. I think more particularly what I called his attention to was the ordinance and also the doors—I was examining the doors at the same time. . . . . Now, I don't think I made any complaint to Isaman about these doors, because I hadn't any to make. I simply called his attention to this ordinance."

It would appear from that evidence that said doors were not in a dangerous condition at the time said conversation took place, which was only a few days before the accident occurred. The record shows that said ordinance No. 266 was passed on the 9th of February and the accident occurred on the 13th of the same month. The accident no doubt occurred because of Fountain's having broken the hinges on one of said doors which caused the door to slip from its support and fall in when Mrs. McLean stepped on it. It will be observed that only four days intervened between the passage

of the ordinance on the 9th of February and the happening of the accident on the 13th of February. It appears that the doors were of sufficient strength and remained in proper place from the time of their construction in November, 1899, until the accident occurred about three months later.

The city relies on the defective original construction of the doors in a sidewalk over a cellar-way, its defective maintenance, notice to Isaman, the use of said street for private purposes, injury to the city by reason of its having to pay said McLean judgment, and its consequent right to recover against the owner of the property; while the defendant claims that the doors were originally constructed in a safe manner; that the premises with the area-way were leased; that the action was barred by the statute of limitations; and the contentions resolve themselves into the question as to whether the plaintiff has made a case against the defendant.

While a great many errors have been assigned, they are easily grouped and will be discussed under a very few heads.

The first question presented is: Has the city of Lewiston the right to recover from the appellant, who is an abutting property owner on the main street of said city, the amount which it has been compelled to pay for injuries received by Mrs. McLean on account of defective doors over a cellar-way in a sidewalk, under the common law, statute law or ordinances of the city of Lewiston as applied to the evidence in this case?

Judge Freeman, in his note to *Browning v. City of Springfield,* 17 Ill. 143, 63 Am. Dec. 355, says:

"It is universally admitted, and held by the cases to be hereafter cited, that no common-law duty and therefore no liability, rests upon the owner or occupant of premises fronting upon a public street or highway to keep such street or highway in repair."

The author then cites and quotes from many decisions in support of that doctrine.

It is said by the court in *The City of Rochester v. Campbell,* 123 N. Y. 405, 20 Am. St. 760, 25 N. E. 937, 10 L. R. A. 393, that "no obligation to repair streets or sidewalks rests

upon the lot owners at common law, but the duty to do so, if any, arises out of the statutory obligations imposed by the state or municipality upon them."

It is clear under the authorities that the defendant is not liable over to the city under the common law.

The next question presented is whether there is anything in our statute that changes the common-law rule in this respect and makes an abutting lot owner liable over to the city for personal injury.

The charter of the city of Lewiston, as amended by an act approved December 30, 1880, contains certain provisions which were in force at the time of said accident, and prescribes the duties and powers of said city. Among other things, sec. 5 of that act provides that said city has the power to control "all streets, highways, squares, and other public grounds within its limits, established or appropriated to public use by authority of law, or which have been or may be hereafter dedicated to public use by any person or persons. . . . ."

Sec. 7 of said charter, as amended by Session Laws 1899, p. 444, contains, among other provisions, the following:

"To provide for clearing, opening, graveling, improving, constructing, and repairing streets, highways and alleys, and sidewalks and gutters, and for the prevention and removal of all obstructions therefrom, or from any cross or sidewalks; also to regulate cellar-ways and cellar lights, and sidewalks within the city."

Section 8 of said act is as follows:

"The council, whenever it is deemed expedient to cause sidewalks to be constructed, repaired or kept in order, may, by ordinance, provide for the same. If any person owning real estate within the city shall refuse or neglect to build or repair said walks, according to the requirements and provisions of said ordinance, for sixty days after its publication, the council shall cause said walks to be constructed or repaired and pay for the same out of the general street funds; and the expense thereof shall be assessed on the real property along which said walks are built, and collected as other taxes are collected."

Sec. 17 gives the city authority "To prevent injury . . . . and to cause any nuisance to be abated," etc.

Sec. 23 of said act provides as follows:

"No general laws of the territory shall have the effect to alter or amend this charter, or any of the provisions thereof, when inconsistent therewith, unless the act enacting said laws clearly expresses such intention by a reference to the said charter."

Sec. 93 provides as follows:

"The city of Lewiston shall be liable to anyone for any loss or injury to person or property growing out of any casualty, or accident happening to any such person or property on account of the condition of any street or public ground therein; but this section does not exonerate any officer of such city, or any other person from such liability when such casualty, or accident is caused by the wilful neglect of a duty enjoined upon such officer or person by law, or by gross negligence, or wilful misconduct of such officer, or person in any other respect."

The above-quoted provisions from the charter of the city of Lewiston contain all of the provisions that apply to the question under consideration and do not change to any extent the common-law rule in respect to the liability of abutting property owners for personal injuries resulting from defective sidewalks. But counsel contends that inasmuch as the accident in this case arose from a cellar door which the defendant had placed in said sidewalk, it did not come within the general rule that an abutting property owner was not liable over to the city where there was simply a defect in the sidewalk, but that since defendant placed said cellar doors in the sidewalk for his own convenience and benefit, he is liable over to the city because of any personal injuries for which the city was mulcted in damages.

Under sec. 7 of the city's charter, the city is authorized to regulate cellar-ways and cellar lights and sidewalks within the city. The language used in said section would indicate that the city had the same authority and power to regulate cellar-ways and cellar lights and provide for their proper covering

as it had to regulate and provide for the proper construction of sidewalks.  The word "regulate" means to adjust by rule, method or established mode; governed by or subject to certain rules and restrictions, and to put and keep in good order.  To regulate the use of sidewalks or use of streets includes the control thereof.

It is held in *Jorgensen v. Squires,* 144 N. Y. 280, 39 N. E. 373, that the legislature may authorize the building by property owners of openings for cellar-ways in the sidewalks of the streets of a city; that a city authorized to regulate the use of sidewalks may authorize the building by property owners of openings for cellar-ways in the sidewalk.

There is no question but that the power of the city to regulate the use of sidewalks authorizes it under proper regulations to permit the construction of cellar-ways and cellar lights within the sidewalk.  Said sec. 7 of the charter expressly authorizes such construction, and if they are not kept in proper repair, it is the duty of the city to do so, and it may assess the expense thereof on the lot abutting on the sidewalk where such repair is made.  (See sec. 8 of the charter above quoted.)  The obligation to keep the streets and sidewalks in a safe condition is placed by the charter upon the city.

The city by the provisions of its charter has been provided with a means and power to discharge the duty of keeping the streets and sidewalks in repair.  In the exercise of that power under the provisions of sec. 8 of the charter, if any person owning real estate within the city shall refuse or neglect to build or repair sidewalks according to the requirements of said ordinance, the council must cause said walks to be constructed or repaired and pay for the same out of the street funds, and the expense thereof must be assessed on the real estate along which said sidewalks are built and be collected as other taxes are collected.  The city has full power and authority to enforce the provisions of that section, and in case it neglects to perform the duties there imposed and keep the sidewalks in a safe condition, the city is made expressly liable for any loss or injury to person or property, under the pro-

visions of section 93 of the charter above quoted. But the provisions of said section do not exonerate the officers of the city or any other person from such liability when such casualty or accident is caused by the wilful neglect of the duty enjoined upon the officer or person by law, or by gross negligence or wilful misconduct of such officer or person in any other respect. From the nature of the duty required by the city and the character of the ordinance in question, the only liability resting upon the property owner is that which the ordinance itself imposes. If the abutting owner neglects to construct or repair the sidewalk as required by the city, under the ordinance the city may construct or repair it and the cost thereof may be assessed against the abutting lot and collected from the owner, and if an accident is caused by the wilful neglect of a duty enjoined upon any person by law or by the gross negligence or wilful misconduct of the lot owner, he then is liable to the person injured or may be liable over to the city if the city should pay for such injury. But unless such injury is caused by the wilful neglect or gross negligence or wilful misconduct of the lot owner, he is not liable for such injury, neither to the party injured nor over to the city in case it is mulcted in damages by the injured person.

It was held in the *City of Rochester v. Campbell, supra,* that the owner of a city lot is not liable for injuries received by a third person because of a defect in the sidewalk in front of his property, where such defect was not caused by the lot owner's wilful act or neglect, either at common law or by the terms of a city charter, which makes it the duty of lot owners to keep the sidewalks in front of their lots in good repair and gives the superintendent of streets the power to repair defects at the lot owner's expense in case the latter neglects to do so; and it is immaterial whether the recovery is sought by the person injured or by the municipality after having paid the damages for such injuries. The court in that case recognized the well-settled principle that whenever a party causes, constructs or creates a nuisance in a public street or highway, he is responsible in damages to anyone who may receive injuries in consequence thereof.

In that case, after reviewing a number of decisions, the court concludes as follows:

"Any other conclusion than that reached by us would, we think, be most unfortunate, as it would tend to relax the vigilance of municipal corporations in the performance of their duties in respect to the repair of streets and highways, and impose that duty upon those who might be utterly unable to discharge it. It would tend directly to demoralize the public service and lead to disorder, decay and impassability of the public highways."

The provisions of said charter require the proper officers of the city to be vigilant in keeping the streets and sidewalks in repair so that no injuries shall occur to the traveling public, and the city has ample authority to make by ordinance proper rules and regulations therefor. In most of our cities many lots are owned by nonresidents and by people who do not and cannot well examine and keep in repair at all times the sidewalks along their property, and it was the evident intent of the legislature in adopting the charter of the city of Lewiston to place the duty upon the city of keeping its streets and sidewalks in good repair, and if the property owner refuses to make repairs at the proper time, the city is in duty bound to do so and assess the cost of such repairs against the abutting lots. Any other rule would tend to relax the vigilance of the city officials and impose that duty perhaps upon nonresident lot owners and those utterly unable to discharge the duty in time to protect the traveling public from injury.

In *Wilhelm v. City of Defiance,* 58 Ohio St. 56, 65 Am. St. 745, 5 N. E. 18, 40 L. R. A. 294, the court held that a municipal corporation having, in the proper mode, provided for the construction of a sidewalk and notified the owner of abutting land, may require of him the construction of a sufficient walk in front of his premises, and upon his default, may itself construct such walk and assess the cost thereof upon his land; but it cannot recover from him indemnity on account of a judgment recovered against it for injuries occasioned by such owner's negligent construction of the walk.

In *Russell v. Village of Canastota,* 98 N. Y. 496, the court said:

"It cannot be decided, as a legal proposition, that if the trustees saw fit to delegate their authority to the lot owner, they could, by that act, relieve themselves from the duty of supervision or liability for his negligence or their own omission to take the necessary steps to accomplish the object to which their attention had been called, by immediate reparation or a resort to the proceedings pointed out in the act to compel owners to make the improvement. The trust imposed upon municipal authorities in respect to streets and sidewalks is an important one."

The cases cited by counsel which involve putting certain obstructions in the streets which are nuisances *per se* are not in point. A different rule of law is applied to that class of cases. For instance, if one digs a hole in the street or sidewalk and leaves it unprotected, or places some obstruction in the streets, it is not a parallel case with the one at bar. Such acts are not authorized by ordinance; whereas, in the case at bar, the making of cellar-ways under sidewalks and the placing of proper doors over the same is not unlawful as it is authorized by the ordinance of the city of Lewiston. Thus the power to construct said cellar-way and doors thereon was made lawful by the provisions of said ordinance and was not a nuisance *per se.* Counsel for the city seek to bring this case within a certain line of decisions involving certain acts not authorized but impliedly prohibited by city authority. Those cases involved dangerous conditions of the street occasioned by the unlawful acts of the abutting property owner or others; while the case at bar involves the construction of a door in a sidewalk which was authorized by ordinance. The court in the case of the *City of Rochester v. Campbell, supra,* at page 396, draws the distinction between the two classes of cases in the following language:

"These were all cases where the dangerous conditions of the street were created by the defendants, and they were held liable for the consequences of their unlawful acts, under their common-law obligations as the creators of a nuisance, and not

by reason of any duty enjoined upon them by statute or otherwise. The distinctions between such cases and those relating to the consequences following a neglect of some duty imposed by statute are manifest and radical.''

Cellar-ways and doors thereof in sidewalks are maintained by authority of law in this state, hence, under the provisions of sec. 3659, Rev. Codes, cannot be deemed nuisances. Said section is as follows:

''Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.''

Had the city performed the duty imposed on it by law, that is, of keeping its streets in reasonable repair, said accident would not have happened. The city, then, may be considered a wrongdoer, and if it should be held that the appellant was also at fault because of a certain duty resting upon him, the city could not escape the charge of being a joint *tort-feasor* and could not recover over against the defendant, since there can be no recovery by the city, under the rule that one of two joint wrongdoers cannot have contribution from the other. (See *Wilhelm v. City of Defiance*, 58 Ohio St. 56, 65 Am. St. 745, 5 N. E. 18, 40 L. R. A. 294.)

The attention of the court is next directed to the fact that Isaman was not permitted to defend or aid in the defense in the suit against the city by the McLeans, but in our view of this case it will not be necessary for us to pass upon the effect of the refusal of the city to permit Isaman to take any part in the defense of said action. In this case the defendant was not permitted to come in and defend, hence is not bound by the judgment, even though he were liable in this action.

Counsel to sustain their contentions in this action rely largely upon the doctrine laid down in the following cases: *Robbins v. City of Chicago*, 4 Wall. (U. S.) 657, 18 L. ed. 427; *Washington Gas Light Co. v. District of Columbia*, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. ed. 712; *City of Seattle v. Puget Sound Improvement Co.*, 47 Wash. 22, 125 Am. St. 884, 91 Pac. 255; *Forster v. Moore*, 156 N. Y. 666, 50 N. E. 1117. It is contended that those cases fully sustain the doctrine that

when a municipality has been mulcted through the negligence of an individual to keep the sidewalk in front of his premises in proper repair, the municipality can recover over against such person all sums paid out by it. The facts in the Chicago-Robbins case were different from those in the case at bar. The defendant in that case had notice of the pendency of the action and was not refused to appear to defend therein, and upon that point the court in the course of the decision said:

"Parties in that connection include all who are directly interested in the subject matter, and who had a right to make defense, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment. Persons not having those rights substantially are regarded as strangers to the cause, but all who are directly interested in the suit and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of those rights, are equally concluded by the proceedings."

In the case at bar the defendant knew of the existence of the suit and requested that he be permitted to come in and defend but was denied that right. In that case the court placed the liability of the defendant upon the ground that he left the area-way open and without guards to warn those who had occasion to pass on the street, so that the work which was originally lawful became a nuisance and was unlawful at the time of the injury. The attention of the defendant was called several times to the dangerous condition of the sidewalk in that case, and the superintendent of public works gave him notice in writing that the area-way was not properly covered. The court said: "He gave no heed to these admonitions, but insisted throughout that it was the sole business of the contractor, with which he had nothing to do," and said, "Such wilful negligence the law will never excuse." The facts of that case show that defendant was guilty of gross negligence and wilful misconduct, and it was not made the duty of the city to keep the sidewalk in repair. There are no such facts in the case at bar. The charter of the city of Lewiston provides that if casualty or accident is caused by the wilful neglect of a duty enjoined by law or by gross

negligence or wilful misconduct, then the person is liable; otherwise, not. Hence the Robbins case does not rest upon similar facts and was not decided upon the principles of law that are applicable to the case at bar. In the case at bar the entire premises were leased; the doors in question were made new and placed over said cellar-way about three months prior to the accident, and one of the lessees, Fountain, broke the hinges on the door and failed to notify Isaman or to repair them.

In the Washington Gaslight Co. case (161 U. S. 316, 16 Sup. Ct. 564, 40 L. ed. 712), the defendant had the opportunity to come in and defend and refused to do so, and in regard to its action therein the court said:

"As a deduction from the recognized right to recover over, it is settled that where one having such right is sued, the judgment rendered against him is conclusive upon the person liable over, provided notice be given to the latter and full opportunity be afforded him to defend the action."

In that case the act of Congress incorporating the gas company provided that their pipes should be laid subject to such conditions and in compliance with such regulations as the corporation of Washington City might from time to time prescribe. The trial court in that case instructed the jury that the gas box was a part of the apparatus of the company, and hence it was its duty to exercise proper care over it and thus prevent injury to persons using the sidewalk. The court said:

"The authority of the company over the gas boxes and its correlative duty to supervise and keep them in order, thus deduced from the terms of the charter, the nature of its business, and the use to which the gas boxes are applied, is also sustained by authority. . . . . It would be unreasonable to infer that Congress, when it authorized the use of the streets or sidewalks for the purposes of the gas company's business, contemplated that the city of Washington or its successor, the District of Columbia, should keep in repair such apparatus. . . . . We conclude, therefore, that the duty was imposed upon the gas company to supervise and keep the gas box in repair. This duty not only does not conflict with the charter of the

company, but on the contrary, is sanctioned by its tenor, and is imposed as an inevitable accessory of the powers which the charter confers.''

In that case it was a duty placed upon the gas company and not on the District of Columbia to supervise and keep in repair its gas fixtures. It was its private property and not placed on the street for pedestrians; while in the case at bar, the charter of the city of Lewiston placed the supervision of cellar-ways and doors thereover upon the city, and made provision that in case the city expended any money whatever for that purpose, it might recover the same by assessment against the abutting property.

In the *City of Seattle v. Puget Sound Co., supra,* on the question as to whether the tenants had control of the building referred to, the court said:

''It is true the appellant leased offices and storerooms therein to different tenants; but the control of the building and its maintenance, and the actual possession of a part of the building, were in the appellant personally at all times. Under these circumstances appellant would be liable. . . . . Upon the transfer of the entire interest and possession to another, as the duty runs with the land, it would be cast upon the grantee. So a lessee of the entire premises and possession thereof by the tenant would doubtless throw the burden upon the latter. . . . . If he parts with the premises, or parts with the possession thereof for a period, the burden falls on his successor in title or possession. . . . . Nor can he relieve himself of the duty without parting with the entire possession of the property benefited.''

In the case at bar, it is clear to us that the appellant had parted with the possession of the entire building under lease. It is true he had agreed to keep the roof of said building in repair, but no other part of it.

The allegations in the City of Seattle case were that the defendant maintained an area-way beneath the sidewalk with trap-doors in the sidewalk; that the doors were carelessly and negligently maintained and were unlawfully and dangerously raised above the surface of the sidewalk two or three inches,

and the court held that the complaint was sufficient. The ordinances of the city of Seattle do not contain provisions like those found in the old charter of the city of Lewiston, and that case was decided under the provisions of the law and the Seattle charter, and the authorities upon which that case was evidently decided seem to apply to obstructions that were nuisances *per se,* while under the charter of Lewiston, cellar-ways and cellar doors are not nuisances and the right of the property owner to construct them is clearly given under the supervision of the city. The law under which the Seattle case was decided is not the same as that under which the case at bar must be decided. The legislature, in the Lewiston charter, provided when and where the property owner becomes liable in such cases, and in order to make him liable, he must be brought clearly within the law. He must be guilty of wilful neglect of the performance of a duty enjoined by law, or gross negligence or wilful misconduct, neither of which is made to appear in this case. By reason of the different statutes and charters and the rules of law by which said cases were decided, those decisions are not applicable to the case at bar, and for that reason said cases are not in point.

There are at least two reasons why the judgment in this case must be reversed: First, defendant is not liable on the facts of this case under the provisions of said section 93 of the charter of the city of Lewiston which makes the city liable for any loss or injury to person or property growing out of any casualty or accident happening to any person or property on account of the condition of any street or public ground therein, and only makes the property owner liable when such casualty or accident is caused by wilful neglect of a duty enjoined by law or by gross negligence or wilful misconduct on the part of such person, and it is not made to appear from the evidence that the defendant is guilty of any acts which would bring him within the provisions of said section 93; and second, even if there were any liability under the charter,

it would not fall on appellant as he had leased the entire premises and tenants had possession thereof.

The judgment must be reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion. Costs are awarded to the appellant.

Ailshie, Presiding J., and Woods, District Judge, concur.